## SUPREME COURT.

### THOMAS C. BATES agt. THE NEW-ORLEANS, JACKSON and GREAT NORTHERN RAILROAD COMPANY.

*Service of a summons* upon the president, or other head of the corporation—secretary, cashier, treasurer, director, or managing agent thereof—can be made in respect to a *foreign corporation, only when it has property within this state, or the cause of action arose therein.* (*Code*, § 134 )

An action against a foreign corporation may be brought in the supreme court, superior court, and court of common pleas, of the city of New-York, in the following cases :—

1st. By a resident of this state for any cause of action. 2d. By a plaintiff not a resident of this state when the cause of action shall have arisen, or the subject of the action shall be situated within this state. (§ 427.)

The plaintiff may have the property of the defendant, being a foreign corporation, non-resident, or absconding, or concealed debtor, *attached*, at the time of issuing the summons, or at any time after. (§ 227.)

The regularity of the service of a summons upon a foreign corporation does not depend upon proof being previously made of the facts, the existence of which is necessary to give the court jurisdiction of the action—that is, the facts concerning the residence of the plaintiff, or showing that the cause of action arose, or that the subject of the action was, or is situated in this state. The evidence of these facts must be shown on motion to set aside the service of the summons.

The section of the Code (§ 134) authorizing the service of the summons on the president, &c., of a corporation, is simply a substitution of that mode for a service by publication, as provided in § 135

Bates agt. The New-Orleans, Jackson and Great Northern Railroad Co.

Where service of a summons is made personally on the president of a foreign corporation in this state, and it is conceded that the cause of action arose, or that the subject of it is situated out of this state, the plaintiff must establish, in order to render the service of the summons regular,

1st, That, at the time of the commencement of the action, he (the president) was a *resident of this state;* and,

2d. That, at the same time, the *defendants had property in this state.*

The meaning of § 134 of the Code, in relation to the service of a summons upon the president, &c. of a foreign corporation having property in this state, is, that the property must be such as may be taken *by virtue of an attachment* in pursuance of § 227, and other sections in the same chapter.

A contract by such corporation for the manufacture and purchase of property in this state, to be paid for on delivery at their office out of this state, does not give the corporation a *title* to such property *until delivered and paid for* according to the agreement.

Therefore, where such property is on its passage through this state to its destination out of the state, it is not liable to be taken on attachment against the corporation.

Where it appeared that the defendants, a foreign corporation, (in New-Orleans,) owned a large amount of bonds, of the city of New-Orleans and the state of Louisiana, payable to the order of the defendants, and on the 4th of August, 1855, the city of New-Orleans bonds were, by direction of the defendants, inclosed in packages addressed to a banker in London, and deposited in the post-office in the city of New-York, on that day, by their president, to be sent to London by regular course of mail; that the Louisiana state bonds, on and previous to the said 4th of August, 1855, had been deposited with bankers in the city of New-York, with instructions by the said defendants to deliver them to their president on the payment by him of two notes of the defendants for $100,000 each, which were held by these bankers; that on the 2d and 4th of August, 1855, the president, as he was authorized to do, sold these state bonds to another banker in the city of New-York for a certain sum, on the terms that if the latter sold the bonds for more than that sum, deducting commissions, brokerage and interest, the balance was to be paid to the defendants, but if for less, the defendants were to refund the balance to the banker; that the said president, on said 2d and 4th of August, paid said two notes, and an order of the defendants on him of the 4th of August for $50,800, which took all the avails of said bonds, and delivered to the latter banker all the state bonds, who subsequently sold them for less than the sum paid, leaving a balance due him from the defendants; that on the 9th of August, 1855, the summons in this action was served in the city of New-York on their president.

*Held,* that the New-Orleans city bonds were not, on the 9th of August, 1855, subject to an attachment; they were before that day beyond the reach of such process against the defendants: besides, an attachment could not have been executed upon them, for the reason that they being debts due the defendants, the sheriff could not have left a certified copy of the warrant of attachment

Bates agt. The New-Orleans, Jackson and Great Northern Railroad Co.

with the obligors—the city of New-Orleans—they being the debtors and beyond his jurisdiction.

*Held*, also, that the same principles applied to the order for the $50,800 balance of the proceeds of the state bonds over and above the two notes paid by the president. Also, that the proceeds of the sale of the state bonds were not, at the time the summons was served, property of the defendants within this state, $200,000 of such proceeds was paid in liquidation of the debts of the defendants.

The *onus* lay upon the plaintiff to show that the New-Orleans city bonds, and the order for the $50,800 balance on the state bonds, did not leave New-York until the 9th of August, or after the service of the summons.

*Monroe General Term, Sep.,* 1856.

T. R. Strong, Welles *and* Smith, *Justices.*

Motion by defendants to set aside the service of the summons and all other proceedings in the cause. The defendants appear to make this motion, and for no other purpose. The facts are sufficiently stated in the opinion of the court.

A. Green, *for defendants.*
John H. Martindale, *for plaintiff.*

By the court—Welles, Justice. The defendants are a foreign corporation, created under and by virtue of the laws of the states of Louisiana and Mississippi. Their office and place of business has always been in the city of New-Orleans, where all their officers reside, and where all their books and papers are kept. The summons is in the ordinary form under the Code for the commencement of an action for the recovery of money upon contract, and was served personally upon John Calhoun, the president of the corporation, at the city of New-York, on the 9th of August, 1855, at about 6 o'clock, P. M. of that day.

The motion is founded upon the following alleged facts, viz. :

1. That the plaintiff was not a resident of this state when the action was commenced.

2d. That at the time of the commencement of the action the defendants had no property within this state, and that the alleged cause of action did not arise therein.

The Code (§ 127) provides that civil actions shall be commenced by the service of a summons. By § 134, if the action

Bates agt. The New-Orleans, Jackson and Great Northern Railroad Co.

be against a corporation, the summons shall be served by delivering a copy thereof to the president or other head of the corporation, secretary, cashier, treasurer, a director or managing agent thereof; *but such service can be made in respect to a foreign corporation, only when it has property within this state, or the cause of action arose therein.*

By § 427, an action against a corporation created by, or under the laws of any other state, government, or country, may be brought in the supreme court, &c., in the following cases:

1. By a resident of this state for any cause of action.

2. By a plaintiff, not a resident of this state, when the cause of action shall have arisen, or the subject of the action shall be situated within this state.

By § 227, the plaintiff may have the property of the defendant, being a foreign corporation, non-resident, or absconding or concealed debtor, attached, at the time of issuing the summons, or at any time after.

There was no proof made, before or at the time of the service of the summons, concerning the residence of the plaintiff, nor showing that the cause of action arose, or that the subject of the action was or is situated in this state; and the defendants' counsel now contends that such omission renders the service of the summons irregular and void.

But we think the regularity of the service of the summons does not depend upon proof being previously made of the facts, the existence of which is necessary to give the court jurisdiction of the action. The Code nowhere requires such proof to be made, or that any evidence shall be given relating to such facts. Their existence must be determined upon the evidence furnished on this motion.

Any judgment which the plaintiff may or might obtain will be of no value to him in case the defendants should not appear to the action, and submit to the jurisdiction of the court, unless he has attached, or shall be able to attach, property of the defendants in this state, before judgment. Such judgment would be *in rem*, and not, as we think, *in personam*.

The law has not been changed in regard to the character or

effect of a judgment against a foreign corporation, since the decision of the case of *Hulbert* agt. *The Hope Mutual Ins. Co.,* (4 *How. Pr. R.* 275,) the doctrine of which we approve.

The section of the Code above referred to authorizing the service of the summons on the president, &c., of a corporation, is, in our judgment, simply a substitution of that mode for a service by publication, as provided in § 135.

It is not necessary to inquire whether any property of the defendants has been legally attached in this action, because, as we have seen, it is competent for the plaintiff, by § 227, to attach such property hereafter, if he shall discover any.

This brings us to the questions of fact involving the jurisdiction of the court to entertain the action, and upon which the validity of the service of the summons depends.

The plaintiff's counsel does not contend that the cause of action arose, or that the subject of it is situated in this state; but he claims that the evidence establishes, 1st. That at the time of the commencement of the action he was a resident of this state; and, 2d. That, at the same time the defendants had property in this state. These two propositions are denied on the part of the defendants. They must both be determined in favor of the plaintiff, or it will follow that the service of the summons was irregular, and should be set aside.

In regard to the first, it is clear, upon the evidence, that the plaintiff has resided in this state since prior to the month of August, 1855, embracing the time of the service of the summons, which was on the 9th of August of that year. It is satisfactorily shown that although he resided in the state of Louisiana in the year 1854, and for some time previously, yet that he removed to the city of Rochester in this state in the fall of that year, and has resided in the latter place ever since.

It remains to consider whether the evidence establishes that, at the time of the service of the summons, the defendants had property in this state. The plaintiff claims that, at that time, the defendants were the owners of six locomotive lamps, worth $85 each, which were in this state at the time in question; and also, that at the same time they had a large amount of bonds

of the state of Louisiana, and of the city of New-Orleans, which were in this state at the same time.

The meaning of § 134 of the Code, in relation to the service of a summons upon the president, &c., of a foreign corporation having property in this state, is, that the property must be such as may be taken by virtue of an attachment in pursuance of § 227, and other sections in the same chapter. (*Danforth* agt. *Penny*, 3 *Metc.* 564.)

In regard to the lamps, the affidavits show the following facts: That shortly previous to the 9th day of August, 1855, John Calhoun, as president of the defendants' company, and having sufficient authority for that purpose, contracted with Austin Olcott, of the city of Rochester, who, with Milton Olcott, were manufacturers of locomotive lamps, in Rochester, to send to the defendants, in the city of New-Orleans, six lamps, commonly called Olcott's locomotive engine lamps, at the price of $85 each, and of that value, to be forwarded by Olcott to the defendants, and to be paid for by them at New-Orleans upon their delivery there, the defendants also to pay the expense of transporting the lamps from Rochester to New-Orleans, and Olcott to guaranty their safe arrival at the latter place. That, in pursuance of such contract, the six lamps were, on the said 9th day of August, before two o'clock in the afternoon, by directions of said Austin Olcott, packed and delivered at an express office in Rochester, directed to the defendants at New-Orleans. That the said lamps passed through the city of New-York, and were seen there on the 10th or 11th of the same month of August, on their way to New-Orleans, where they afterwards arrived, and where they were received and paid for, together with the express charges, by the defendants, pursuant to contract.

Under these circumstances, the title of the lamps remained in Olcott until their arrival at New-Orleans and were paid for by the defendants.

It was a mere contract for a sale of the lamps, payable on delivery, and the defendants did not acquire the title until the lamps were delivered to, and paid for by them. If they had

been lost or destroyed on their transit, the defendants would, in no event, have been entitled to call on the express company for damages; and it would be preposterous to say the lamps were liable, while on their passage through this state, to be taken on an attachment against the defendants. (*Andrew* agt. *Dieterich*, 14 *Wend*. 31; *Malcom* agt. *Loveridge*, 13 *Barb. S. C. R.* 372–376; *Angell on Carriers*, §§ 495, 496.)

With respect to the bonds of the city of New-Orleans, and of the state of Louisiana, the facts established by the evidence are as follows:—

On and previous to the 4th day of August, 1855, there were in the hands of Frost & Forrest, of the city of New-York, belonging to the defendants, two hundred and thirty-nine bonds of the city of New-Orleans for $1,000 each, which, by direction of the defendants, had been sent from London to Frost & Forrest, to be forwarded by them to the defendants at New-Orleans. These bonds were made and issued by said city of New-Orleans, payable to the New-Orleans, Jackson and Great Northern Railroad Company, (the defendants,) or their assigns, at the office of the city treasurer of the city of New-Orleans, in twenty years from their date, with interest at the rate of six per cent. per annum, semi-annually on the first days of May and November in each year, on the delivery of the interest, coupons attached, in the city of New-York, at such bank as the comptroller of the city of New-Orleans should direct. The bonds were dated May 1st, 1854. On the said 4th day of August, 1855, Calhoun, the defendants' president, being in the city of New-York on his way to Europe, and being authorized so to do, received the said New-Orleans city bonds from Frost & Forrest, and caused them to be inclosed in four packages, addressed to J. Henry Schroeder & Co., London, which packages, so addressed and inclosing said bonds, were deposited in the post-office in the city of New-York on the said 4th day of August, to be sent by regular course of mail to the said Schroeder & Co. That said packages, with the said bonds inclosed, were afterwards, by due course of mail, received by said Schroeder & Co. in London. It does not appear at what particular

Bates agt. The New-Orleans, Jackson and Great Northern Railroad Co.

time the bonds left the city of New-York after they were so deposited in the post-office, nor whether on or before, or after the 9th day of the said month of August.

One hundred and thirty-one Louisiana state bonds, for $1,000 each, belonging to the defendants, which had been pledged in New-Orleans to the Bank of Louisiana, as security for the payment of a note drawn by the defendants for $100,000, which said bank had discounted, had, at the request of the defendants, been placed by said bank, on or before the 2d day of August, 1855, in the hands of A. E. Silliman, cashier of the Merchants' Bank, New-York, with instructions to deliver the 131 last mentioned bonds to Calhoun for the defendants, on his paying him, Silliman, the $100,000 due from the defendants to the Bank of Louisiana.

One hundred and thirty-three other Louisiana state bonds, for $1,000 each, belonging to the defendants, which had been pledged in New-Orleans to the New-Orleans Canal and Banking Company, as security for the payment of a note drawn by the defendants for $100,000, which said company had discounted, had, at the request of the defendants, been placed by said banking company, on or before the 4th day of August, 1855, in the hands of Matthew Morgan & Son, New-York, with instructions to deliver the said 133 state bonds last mentioned to said Calhoun for the defendants, on his paying said Morgan & Son the $100,000 due from the defendants on said last mentioned note to the said banking company.

These state bonds were issued by the state of Louisiana, under a law of that state, payable to the order of the defendants in forty years, in the city of New-Orleans, with interest at the rate of six per cent. per annum, payable semi-annually, in the city of New-Orleans, on the first days of May and November of each year, upon the delivery of the interest warrants annexed. The bonds were dated November 1st, 1854, and were transferable by indorsement.

On the 2d of August, 1855, the said Calhoun, acting in behalf of the defendants, and having authority from them, sold, to Wm. Hoge & Co., of the city of New-York, the 264 Louisi-

ana state bonds before mentioned for ninety-five cents on the dollar, or $250,800 in all. Said Hoge & Co. paid for them as follows:—

| | |
|---|---:|
| Aug. 2, 1855, cash . . . . . . | $100,000 |
| " 4, " " . . . . . . | 100,000 |
| " " " order on J. Robb & Co., New-Orleans, which was paid, . . . . | 50,800 |
| | $250,800 |

On the 2d day of August, 1855, Calhoun paid Silliman for the note of the defendants, which had been discounted by the Bank of Louisiana, the first $100,000—received from Hoge & Co., and Silliman surrendered the said 131 Louisiana state bonds, which Calhoun delivered to Hoge & Co. on said 2d of August, 1855.

On the 4th of August, 1855, said Calhoun paid Morgan & Son for the defendants' note of $100,000, which had been discounted by the New-Orleans Canal and Banking Company, the second $100,000—received from Hoge & Co., and Morgan & Son surrendered the 133 Louisiana state bonds in their hands as aforesaid, which Calhoun delivered to Hoge & Co. on the said 4th day of August, 1855. It was further agreed between Hoge & Co. and Calhoun, that the former should sell the 264 Louisiana state bonds, and if they produced more than ninety-five cents on the dollar, with commission and brokerage of five-eighths per cent. and seven per cent. interest per annum, the surplus was to be paid to the defendants; if they produced less, the difference was to be refunded to Hoge & Co. by the defendants.

It also appears that subsequently the 264 bonds last mentioned were sold by Hoge & Co. for less than ninety-five cents on the dollar, with the said five-eighths per cent. commission and brokerage and the said interest, and that the defendants owe the said Hoge & Co. for the deficiency. But it does not appear at what time the said bonds were so sold by the said Hoge & Co.

Bates agt. The New-Orleans, Jackson and Great Northern Railroad Co.

It will be seen that the 264 state bonds were all sold by the defendants to Hoge & Co., and the title of the former passed to the latter as early as the 4th of August, 1855—five days before the service of the summons upon Calhoun. After that sale the defendants had no legal interest in them. All the claim they had connected with them was contingent, depending upon the amount for which the bonds should be sold by Hoge & Co., and that claim has never become absolute, but, on the contrary, it is shown to have no existence in fact—the bonds having been sold for less than ninety-five cents on the dollar, with commission, brokerage and interest, as provided in the defendants' contract with Hoge & Co.

While the contingency lasted, it was not a debt belonging to the defendants which could be attached. Section 231 of the Code makes it the duty of the sheriff to whom an attachment is delivered, to attach and safely keep all the property of the defendants within his county. In the case of attaching a debt due the defendant, the sheriff is to execute the attachment by leaving a certified copy thereof with the debtor, with a notice showing the property levied on. (§ 235.) This contingent claim could not be regarded a debt within the sense of the section referred to.

The proceeds of the sale of these bonds to Hoge & Co. were not, at the time the summons was served, property of the defendants within this state. Two hundred thousand dollars of such proceeds was paid by Calhoun in liquidation of debts owing by the defendants, and the remaining $50,800 was paid by Hoge & Co., on an order by J. Robb & Co. of New-Orleans, which was duly paid by the latter to the defendants in the latter place. The $200,000 had passed from the defendants on and before the 4th of August, and the order on Robb & Co. was made on that day. The order was sent by Hoge & Co. to New-Orleans, but it does not expressly appear at what time. Nothing whatever is shown, in the affidavits read on behalf of the plaintiff, touching the time the order was sent; and the presumption is that it was sent immediately. This would be the natural order and manner of transacting the business, as it

was a sale of the bonds for ready pay.   The order was *paid* by Hoge & Co. on account of the purchase of the bonds on the 4th of August.   This could not have been done on that day, if they retained the order in their own hands.   If the order was not sent by Hoge & Co. before the 9th of August, it was competent for the plaintiff to have proved it.   On this point the *onus* lay on him.   Hoge & Co. were competent witnesses, by whom the fact might have been proved, and the above presumption rebutted, if the order was retained until the 9th of August.

It is no answer to this suggestion, that Hoge was requested to make an affidavit and declined, because his deposition could have been obtained under the provisions of the Revised Statutes. (2 *R. S.* 254, §§ 24, 25.)   The affidavit of Mr. Gibbs, read in behalf of the plaintiff, shows, in substance, that Hoge declined to become a volunteer witness, but expressed his willingness to testify when legally required.

In regard to the New-Orleans city bonds, we are of the opinion that they were not subject to any attachment issued in this action, on or after the 9th of August, 1855.   They had been, on the 4th day of that month, inclosed in packages, addressed to Schroeder & Co., London, and deposited in the post-office in the city of New-York.   They were then beyond the reach of process against the defendants.   Whether they actually remained in New-York until the 9th could be shown as easily by the plaintiff as by the defendants, if that were material.   An attachment could not have been executed upon them, for the further reason that the sheriff could not have left a certified copy of the warrant of attachment with the obligor, which was the city of New-Orleans, and beyond the jurisdiction of the sheriff.

In respect to these bonds, the city of New-Orleans was the debtor, and the defendants the creditor, and the debts arising upon the bonds could not be said to exist in this state.   Contracts and debts are treated as having no *situs*, or locality, and they follow the person of the creditor, who, as well as the debtor in the case of all these bonds, state as well as city, were out of the state of New-York.  (*Story's Confl. of Laws*, §§ 362,

NEW-YORK PRACTICE REPORTS.            527

St. John agt. The Mayor, &c., of New-York.

399; *Tingly* agt. *Bateman*, 10 *Mass.* 343, 347.)   This last po-
sition applies with equal force to the $50,800,—the amount of
the order of Hoge & Co. on Robb & Co.,—and also to the
alleged contingent claim of the defendants upon the former,
above considered, and is, as it seems to us, conclusive against
the plaintiff in relation to them all.

For the foregoing reasons, we think the summons, and all
other proceedings by the plaintiff, should be set aside, with
$10 costs.

Ordered accordingly.