McNichol, *Plaintiff in Error*, v. The United States Mercantile Reporting Agency.

1. **Foreign Corporations, Service of Process on.** Service of a summons upon a non-resident corporation having an office or doing business in this State, in the manner provided by the 4th subdivision of section 3489, Revised Statutes 1879, has the effect of personal service and gives the court jurisdiction to enter a general judgment.

2. **Declaratory Statutes.** A statute declaratory of the meaning of a former statute can have no force or effect as to past controversies, but it will control future cases.

3. **Foreign Corporations, Service of Process on**: constitutional law. The legislature has power to pass an act authorizing service of legal process upon any non-resident corporation having an office or doing business within this State by leaving the same with an agent of the corporation within the State, and authorizing the rendition of a general judgment upon such service.

*Error to St. Louis Court of Appeals.*

Reversed.

*G. M. Stewart* and *Paul Bakewell* for plaintiff in error.

It is a matter of public history, that for years corpor-

ations, created by the laws of states and countries foreign, to Missouri, have been permitted to transact business here with its people, with almost or quite the same facility as private individuals. They have been protected in all their rights of property by its laws to the same extent as its own citizens, and enjoyed all their immunities. They have been permitted to use the processes of its courts in the enforcement of their rights against the citizens of Missouri, in the same manner and with the same effect as its citizens, and that, irrespective of their having a local establishment or habitation here. While they have enjoyed these privileges unimpeded, it is not until within a comparatively recent period that the people of Missouri could proceed against these corporations in the same manner and with the same facility as they were proceeded against. While a citizen could be sued, for the purpose of procuring a personal judgment, by the foreign corporation, against him, the corporation could only be subjected to the process of attachment, or by proceeding against the *rem*. *Hill v. Sewing Machine Co.*, 4 Mo. App. 595. This was often extremely burdensome, and beyond the ability of the injured party to accomplish, because of the difficulty of procuring the necessary bond, and, besides, it entailed an undue amount of trouble, responsibility and expense to the citizen. It resulted in an unjust discrimination in favor of the foreign corporation against the citizen. If there was no property to be sequestered, the citizen of Missouri could not bring his action and establish his rights in the *forum* where the cause of action arose, and where the evidence existed; but he must either abandon them, or he must go to the home of the corporation and there pursue his remedy with all the obvious disadvantages. In this there was an evident want of reciprocity on the part of the foreign corporations; and the legislature has from time to time endeavored to cure this defect in the jurisprudence of this State. [See the several acts referred to in the opinion.] This legislation culminated in section 3489, Revised Stat-

utes 1879. By this section, we insist, the legislature meant precisely what it said, and it intended to and did provide a means for service, so as to give the court jurisdiction to render a general judgment against all foreign corporations. having an office or doing business in this State, except those for which other methods have been provided, as railroad and insurance companies; and this was within legislative competency. *Farnsworth v. R. R. Co.*, 29 Mo. 75; *City v. Wiggins Ferry Co.*, 40 Mo. 580; *Gibbs v. Queen Ins. Co.*, 63 N. Y. 123; *Barnett v. Chicago, etc., R. R. Co.*, 6. Thomp. & Co. (N. Y.) 359; *Pope v. Man'f'g Co.*, 8 South. L. Rev. 182; *Freeholders v. R. R. Co.*, 41 N. J. 255; 14 Off. Gazette 523. Statutes similar to ours exist in many of the states and have received judicial construction. *Lafayette Ins. Co. v. French*, 18 How. 405; *Railroad Co. v. Harris*, 12 Wall. 81; *City Fire Ins. Co. v. Carrugi*, 41 Ga. 660; *Howe Machine Co. v. Souder*, 58 Ga. 64; *Wheeling, etc., Trans. Co. v. B. & O. R. R. Co.*, 1 Cin. 311; *Western Union Telegraph. Co. v. Pleasents*, 46 Ala. 641; *Runkle v. Ins. Co.*, 2 Fed· Rep. 9; *Brownell v. R. R. Co.*, 3 Fed. Rep. 761; *Hayden. v. Man'f'g Co.*, 1 Fed. Rep. 93; *Wilson Packing Co. v. Hunter*, 7 Rep. 455; *Weymouth v. R. R. Co.*, 1 McArthur 19; *Ex parte Schollenberger*, 96 U. S. 369; *Railway Co. v. Whitton*, 13 Wall. 270. The declaratory act of 1881 is to be considered and weighed in determining the effect to be given to the provision to which it refers. *Henschael v. Schmidtz*, 50 Mo. 454; Sedgwick Stat., etc., pp. 609, 623, and cases cited. It does not change, modify, limit or restrict any vested right, but only definitively determines the meaning of a former act, respecting the remedy in certain cases. If, however, the court should not take this view of this. statute, it will regard it as an aid in determining the proper construction of section 3489. *U. S. v. Freeman*, 3 How. 556; *Pike v. Megoun*, 44 Mo. 499; *State v. Dill*, 60 Mo. 433.

*Dyer & Ellis* also for plaintiff in error.

*Hitchcock, Lubke & Player* for defendant in error.

So much of section 3489 of the Revised Statutes as authorizes summons to be served upon a foreign corporation whose chief office is out of this State "by delivering a copy of the writ and petition to any officer or agent of the corporation or company in charge of the office or place of business, or if it have no office or place of business, then to any officer, agent or employe, in any county where such service may be obtained," is null and void if it is claimed the same gives to our courts personal jurisdiction over a foreign corporation whose chief office is out of this State. This has been expressly held. *Latimer v. R. R. Co.*, 43 Mo. 105; *Middough v. R. R. Co.*, 51 Mo. 520; *Hill v. Wheeler & Wilson Co.*, 4 Mo. App. 595; *Robb v. C. & A. R. R. Co.*, 47 Mo. 540; *Farnsworth v. R. R. Co.*, 29 Mo. 75; *St. Louis v. Wiggins F. Co.*, 40 Mo. 580. A foreign corporation having its chief office out of this State, is like a non-resident individual and can be sued in this State only by attachment of its goods and property. R. S., § 742; R. S., § 398. So much of section 3489 as is hereinbefore quoted, if valid at all, is valid only to the extent of pointing out one mode of service upon a foreign corporation whose property is found in this State; and to that extent it is a substitute for notice by publication. 43 Mo. 105, and cases cited.

SHERWOOD, C. J.—Action for libel published by defendant in St. Louis and elsewhere, plaintiff being resident in St. Louis. The petition, among other things, charged that "defendant is a corporation created and existing by virtue of the laws of New York, and has an office and place of business in St Louis." Upon the filing of the petition a summons issued against defendant, and the sheriff's amended return upon the same is as follows: "Executed this writ in the city of St. Louis, on the 29th day of January, 1880, by delivering a copy of the said writ and

petition, as furnished by the clerk, to George M. Forster, agent of the United States Mercantile Reporting Agency, who was in its business office and had charge thereof at the time of said service. The president or other chief officer could not be found in the city of St. Louis."

The defendant pleaded to the jurisdiction of the court as follows: "And now comes defendant, and entering its appearance solely for the purposes of this plea, denies that the court has or can have any jurisdiction of defendant in this cause, and avers that defendant is a corporation incorporated under the laws of the state of New York; that defendant's chief office is not in this State; that defendant is not a resident corporation of this State, but is a foreign corporation, having its chief office out of this State; and that defendant has not any office in this State, or agent in charge of any office in this State, nor has it any agent in this State, nor has it ever had any agent or office in this State. And further, that the facts set forth in the amended return of the sheriff upon the writ of summons herein are not true. Wherefore defendant prays that this plea may be allowed and the cause dismissed for want of jurisdiction." Plaintiff filed a motion to strike out this plea, but the motion was denied.

## I.

Section 3489, (R. S. 1879,) which comes under discussion in the present instance, is as follows: "A summons shall be executed, except as otherwise provided by law, either: First, by reading the writ to defendant and delivering to him a copy of the petition; or, Second, by delivering to him a copy of the petition and writ; or, third, by leaving a copy of the petition and writ at his usual place of abode, with some person of his family over the age of fifteen years; (or, Fourth, where the defendant is a corporation or joint-stock company, organized under the laws of any other state or country, and having an office or doing business in this State, by delivering a copy of the writ and petition to any officer or agent of such corporation or com-

pany, in charge of any office or place of business; or if it have no office or place of business, then to any officer, agent or employe in any county where such service may be obtained;) or, Fifth, where there are several defendants, by delivering to the defendant who shall be first summoned a copy of the petition and writ, and to such as shall be subsequently summoned, a copy of the writ; or by leaving such copy at the usual place of abode of the defendant with some person of his family over the age of fifteen years," etc.

I have included in brackets the fourth subdivision of that section, to which special attention is requisite, as upon that plaintiff bottoms his claim that the service herein is valid. Apart from that subdivision, which appears for the first time in the present Revision, the section, save an amendment which struck out the word *white* as it stood in the General Statutes of 1865, is the same as it was in 1855. 2 R. S., 1223, § 7. Section 7, just cited, evidently provided only for service on individuals. The effect of such service upon individuals had been previously defined and declared in section 5 of the same chapter. 2 R. S. 1855, p. 1222. This section corresponds with section 3487 of the present Revision, and provides that ' every defendant served with the summons fifteen days before the return day thereof, shall be bound to appear at the return term of the writ; and if such summons be served less than fifteen days, he shall be bound to appear at the term next after the return term of such writ." Section 1 of the same article (art. 5) provides how suits may be instituted, *i. e.*, by filing a petition, etc., and by the voluntary appearance of the adverse party, or in lack of such appearance, by suing out a writ of summons against the person or attachment against the property of defendant. This section corresponds with section 3485 of the present Revision.

The 4th and 6th sections of the same article of the laws of 1855, make provision that the original writ, in cases not otherwise provided for by law, shall be a summons;

that it shall be returnable on the first day of the next term thereafter, if such first day be within fifteen days thereafter, and if not, then made returnable on the first day of the second term, and that such writ shall command the officer to summon the defendant to appear in court on the return day of the writ to answer the petition of the plaintiff. These provisions correspond with sections 3486 and 3488, of the present Revision, and when service under such provisions is had upon an individual, a general judgment against the party served is authorized.

The question then arises, did the legislature, by the introduction into section 3489 of the fourth subdivision aforesaid, intend that the service of a summons on a *corporation* as provided for in that subdivision, should be followed by like legal effects and consequences as would the like service on an *individual?* In a word, that service of summons in one case should result in the same way as service in the other? If we apply to this case the familiar maxim, " *Noscitur a sociis;*" if we follow the rule laid down by Lord Bacon that *copulatio verborum indicat acceptionem in eodem sensu,* there would seem to be but little room for doubt that the legislature, by coupling in the same section words which provide for service on an *individual* with words which provide for service on a *corporation,* intended that the words thus employed should, from the very fact of the intimate connection of such words, be understood in the same sense and have the same force and effect. And besides, long prior to the enactment of the fourth subdivision now being discussed, the meaning of the words in the different sections I have cited in respect to *individuals* had, in consequence of repeated adjudications, acquired a fixed import. In such cases, where judicial construction puts a certain meaning on the words of a statute, and the legislature, in a subsequent act, *in pari materia,* or as an amendment of the original act, uses the same words, there arises a presumption that the legislature used those words intending to express the meaning which it knew had been

put on the same words before. Broom Leg. Max., 586, and cases cited. And aside from any judicial construction of a statute, the legislature must be presumed familiar with the ordinary results incident to and attendant on the service of the usual process on *individuals*, and when it amends and enlarges a section of a statute by adding thereto a clause providing for similar service on a *corporation*, it is difficult to conceive of any sound reason for believing that any other result was intended in the case of a corporation than in that of an individual.

In further elucidation of the intention of the legislature in this behalf, it is proper to note the history of legislation in this State respecting the service of process on corporations. In 1855 the Revised Statutes provided that " any corporation incorporated by any other state or country and having property in this State, shall be liable to be sued, and the property of the same shall be subject to attachment, in the same manner as individuals, residents of other states or countries and having property, are now liable to be sued and their property subject to be attached." 1 R. S., p. 375, § 22. In 1859 the legislature passed an act providing that "all railroad companies who own and operate roads terminating opposite to the city of St. Louis, and whose chief office or place of business is in the city of St. Louis, shall be sued in the same manner, and no other, that railroad companies chartered by the laws of this State are now sued." Sess. Acts 1859, p. 67. The method there referred to for service on domestic railroad corporations is that found in section 1, Revised Statutes 1855, page 376, as follows : " In all actions which may be instituted against a corporation or incorporated company, it shall be sufficient to issue a summons, commanding the corporation, by their corporate name, to appear and answer the action; which summons shall be directed as provided by this article, and be returnable in like manner, and subject to the same rules and regulations as the like process in case of individuals." The plain purpose of the amendment of

1859 was to place a railroad corporation, incorporated in another state, but having its chief office here, on the same plane as a domestic corporation, which, as above seen, was made suable in like manner, by the like process and subject to the same rules and regulations as " *in case of individuals.*" This provision of the general law (§ 22, *supra*,) respecting service on foreign corporations, and the amendment of 1859 respecting foreign railroad corporations, were considered in connection with each other, and it was held that, in consequence of the amendment above cited, a foreign railroad corporation by reason of its having its chief office or place of business in St. Louis was virtually a resident of this State, subject to ordinary process, and, therefore, there was no ground for the issuance of the extraordinary process of attachment. *Farnsworth v. Railroad Co.*, 29 Mo. 75.

In 1865 a Revision of the statutes occurred, when section 22, *supra*, was blended with the act of 1859, thus: "Any corporation incorporated by any other state or country, and having property in this State, shall be liable to be sued, and the property of the same shall be subject to attachment, in the same manner as individuals, residents of other states or countries, and having property, are now liable to be sued and their property subject to be attached; *Provided*, That all railroad companies who own and operate roads terminating opposite to the city of St. Louis, and whose chief office or place of business is in the city of St. Louis, shall be sued in the same manner, and no other, that railroad companies chartered by the laws of this State are now sued." The act of 1859 was also embodied in chapter 164 of the Revised Statutes of 1865, at section 2, which chapter related to the manner of commencing suits. In 1871 the subject of serving process on foreign railroad corporations came up again for consideration, and this court held in *Robb v. Railroad Co.*, 47 Mo. 540, that the defendant therein could not, under the statute, be served by the ordinary process of summons, because, under the terms of

the statute, jurisdiction was made to depend on the fact that the corporation had its chief office, or place of business, located in St. Louis.

The law remained, as declared in *Robb's case*, until 1877, when, as if with the fixed design of establishing a rule different from that announced in that case, as well as that of *Middough v. Railroad Co.*, 51 Mo. 520, by a divided court, the legislature, leaving section 17 of chapter 62 of the General Statutes, relating to corporations, untouched, amended section 2 of chapter 164, which relates to the manner of commencing suits, by providing that: "All railroad corporations that own or operate roads terminating opposite to any point in this State, and which have *offices or places of business in this State*, shall be sued in the same manner as railroad corporations chartered by this State." Laws of 1877, p. 369. Similar statutes, from time to time, have been passed by our legislature, prescribing the method of service on foreign insurance companies, and making such service equivalent to personal service. 1 R. S. 1855, p. 855, § 1; Gen. St. 1865, p. 402, § 3; Laws 1869, p. 38, § 31. This law is still retained in the present Revision. 2 R. S. 1879, § 6013. Section 22, chapter 34, of the Revision of 1855, which subsequently, by being blended with section 1 of the law of 1859, *supra* became section 17 of chapter 62 of the Revision of 1865, and is now section 742 of the chapter entitled "Corporations" in the present Revision, except that portion of section 17, relating to railroad companies, which portion was amended by the act of 1877, is now section 3497 of the existing laws, and is in the same article, that relating to practice, as section 3489, *supra*. The fourth subdivision of the last mentioned section was enacted by the legislature, as already seen, two years after having placed foreign railroad companies operating roads whose *termini* are opposite to any point in this State, and having offices or places of business in this State, on the same footing as domestic railroad corporations, and many years after foreign insurance companies, by repeated

enactments and repeated revisions thereof, had been put, as to service of process, on the same plane as similar corporations chartered by the laws of the State.

The question then recurs: What object had the legislature in view in adding to section 3489 the subdivision aforesaid? Certainly not to obtain personal service or its equivalent on foreign *railroad and foreign insurance* corporations, for that end had been already accomplished. I can conceive of no other object and no other intention actuating the legislature but a desire to render the service of a summons on all foreign corporations as facile and effective as it already was on individuals, domestic corporations, two classes of foreign corporations and upon foreign joint-stock companies. § 3498. The history of legislation in this State, which I have given fully, supports and is in accord with this view. Thus we have, in 1855, a law allowing service by summons on all domestic corporations; a law authorizing similar service on foreign insurance companies, and a law authorizing any other foreign corporation having property in the State to be sued by attachment or as non-resident individuals are sued. Then, in 1859, a law is enacted allowing foreign railroad companies whose chief office, etc., is in the city of St. Louis to be served with summons, as are domestic corporations. Then, in 1877, we have a law amendatory of the last one and making service by summons valid on all foreign railroad corporations, etc., having offices or places of business in this State. Then, in 1879, when a revision of all the laws occurs, the legislation which had supplied defects in the statute so far as pointed out by the judiciary, culminated in the enactment of the clause being discussed, whereby *all* foreign corporations having an office and doing business in this State, or an agent or employe, are made suable in precisely the same manner as any other defendant, by the delivery of a copy of the writ and petition.

If it be said that this view of the clause in question is incorrect because it renders nugatory and meaningless the

act of 1877, (§ 3497, *supra*,) relating to foreign railroad corporations, the reply is, that it is by no means of infrequent occurrence that sections of the statute that have long since outlived their usefulness, the purpose of their enactment, are, by some oversight, allowed to encumber our statute book. Thus, though the right of entry has long since become obsolete and useless, each succeeding revision keeps it among our laws. *Ferguson v. Bartholomew,* 67 Mo. 212. Nor can I regard the clause in question as amendatory of section 742. That section is in and of itself complete and relates to an entirely different class of cases; relates to those foreign corporations, whether railroad, insurance, manufacturing or what-not, that have no office or place of business in this State so that service of summons can be had on them, but yet having property in this State, suit under that section can be brought against them by attachment or *in rem*, just as it can against individuals. Nor can the view I here advance respecting the clause in question be gainsaid in consequence of such clause not prescribing the effect of the service of the process it specifies, since such effect had been designated by the other sections of the same chapter as to individual defendants, and the clause in question treats defendant corporations in the same way. Besides, the right to *serve* a summons presupposes its lawful issuance, and the legislature having provided that all foreign corporations and joint-stock companies, having an office or doing business in this State might be served with process by delivering a copy of the petition and writ, it is to be presumed that the legislature intended that the *ordinary* consequences should attend such service. Especially should this presumption obtain after this court in *Farnsworth v. Railroad Co., supra,* had declared that a provision for similar service on a foreign railroad corporation having its chief office or place of business in this State was equivalent to ordinary personal service, and exempted such corporation from the extraordinary process of attachment.

Nor will it do to say that the method of service under discussion was intended as merely *constructive* service, substitutionary of that by publication. What warrant is there for such assertion? It is surely not found either in the language employed, or in the context, the contiguous members of the same section. Why then overlook the plain and natural import of the terms used? Why cast about to see if that language which, employed in the same section as to *individuals*, means personal service or its equivalent, may not by some far-fetched and forced construction be construed to mean *publication* when applied to *corporations?* Let us, for the sake of illustration, adopt for the nonce the correctness of the theory that service on the corporation is to have barely the effect of publication, and note the result. In every suit commenced by attachment, the writ contains a clause of summons. 1 R. S. 1879, § 415. An action is commenced by attachment against a foreign *manufacturing* corporation having property in this State, and having an office or doing business in this State, and an agent or employe. The officer, as in duty bound, delivers a copy of the petition and writ to the agent, as an ordinary summons. Ib., § 420. The officer then makes his return as follows : " State of Missouri, county of ——, ss.: Executed the within writ of attachment in the county aforesaid, on the — day of ——, 188—, by attaching the following described property as that of the defendant, to-wit : (describing it,) and by delivering to A B, agent of the within named defendant, at the office of said defendant, a copy of the within writ and petition. I further certify that the *defendant is not to be found in my said county.*"

Would not such a return amount to a *contradiction in terms?* Can a defendant be "*found*" for *one* purpose and be *non est* as to another? But if this return is legal and proper, *what occurs next?* The sheriff makes return that the defendant cannot be found, and thereupon the court, acting conformably with section 3496 in such cases made and provided, orders that *publication be made*, agreeably to

section 3494. So that if the fourth clause aforesaid, in deed and in truth, " *can have no more operation than as a substitute for constructive notice in a proceeding against a non-resident individual*," this will result in a *manufacturing* corporation being served with constructive process *twice*, once by the method prescribed by the fourth clause, and *again* by that prescribed by section 3494. And the consequences would not be different were the proceeding one *in rem*, instead of by attachment.

The illustration I have just employed, as I think, shows, and conclusively shows, that the *"constructive notice"* theory above mentioned is wholly inapplicable to the fourth clause aforesaid, wholly inapplicable for the palpable reason that if that clause is regarded as a mere substitute for service by *publication*, as has been asserted, then section 3494 relating thereto and providing therefor, " *would have been rendered useless*," for why provide *two* methods of publication when already possessed of one applicable to all non-residents? Why provide another which, when employed, does not, as has been shown, even possess the poor merit of being constructive notice, but only lays a basis and paves the way for constructive notice, as provided in section 3494, *supra ?* Can it be possible that the legislature intended any such anomalous and useless result to flow from and follow the operation of the fourth clause? It is impossible to believe this was intended. If it was, then such a construction of the fourth clause, while it does not construe the statute "*to mean nothing*" in *fact*, does so in *effect*; for while service of process under it is valid for some purpose, *that purpose is itself invalid*, as when the service is had with all the formality known to the law, its efficacy is no greater than would be an allegation in a petition or an affidavit of non-residency, as required by section 3494, *supra*. For the reasons aforesaid, I am of opinion that the clause before us was improperly construed by the circuit court.

## II.

Counsel have made reference to the act of March 26th, 1881, which is as follows: "Be it enacted by the general assembly of the State of Missouri, as follows: That the fourth paragraph of section 3489 of article 4 of chapter 59 of the Revised Statutes means, and shall be construed to mean, that service had, as provided by said paragraph, upon the party or parties therein named, has and shall have the effect of personal service; and it shall be as effectual as though the same was served on the principal; and the courts of this State shall have the same right and power to enter a general judgment against the defendant or defendants as if they were created by the laws of this State." Acts 1881, p. 173. This act is a declaratory act, (Sedgwick on Stat., p. 29,) and was passed twenty-five days after the delivery of the opinion of the St. Louis court of appeals, but the act can be of no assistance to us so far as concerns the present case, because legislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made. This would be to install the legislature in the place of the judiciary, with power to revise and overturn the solemn adjudications of the latter—a thing not to be tolerated. Cooley Const. Lim., pp. 93, 94, and cases cited. Such action, however, of the legislature, though retrospectively void, is held valid as to future cases. Ib., pp. 94, 95, and cases cited. But, as heretofore seen, no such legislative aid was necessary, as the clause we have discussed in plain, simple and direct terms declared the legislative intention and will.

## III.

There is only one further point to be discussed, which is the power of the legislature to authorize such service to be the basis for a judgment *in personam*. Reliance is placed by defendant on *Latimer v. Railroad Co.*, 43 Mo. 105. An

examination of this case, however, will show it to differ widely from this one, both in facts and statutory provisions. That suit was brought on a judgment rendered in the state of New York against a corporation, based upon service had on a *director* temporarily present in the city of New York, when the corporation had no office in that state, and section 134 of the laws of 1849 required such service on the foreign corporation to be made "*personally upon the president, treasurer or secretary thereof.*" In such circumstances this court very properly held that no jurisdiction over the corporation was acquired, and that the judgment was a nullity. That decision was based on *Hulbert v. Ins. Co.*, 4 How. Pr. 275 ; *Brewster v. Railroad Co.*, 5 How. Pr. 183, and *Bates v. Railroad Co.*, 13 How. Pr. 516, which construed the law of 1849. Subsequently the law of that state was changed, and the act of 1855 was passed, (chap. 279,) which contained similar provisions to our present provisions as to service on foreign insurance companies. The effect of the law was considered by the court of appeals in *Gibbs v. Ins. Co.*, 63 N. Y. 114, in a most elaborate and exhaustive manner, embracing a history of legislation in that state as well as the examination of numerous authorities, and the conclusion reached that the statute authorizing personal service and a personal judgment against a foreign insurance corporation, was valid to all intents and purposes.

And in this State it was held that a foreign insurance corporation having an agent appointed by it, as required by the act of December 8th, 1855, should be regarded as a domestic corporation, (1 R. S., § 1,) might be garnished and a general judgment rendered against such corporation, Napton, J., remarking : "Such agents do in fact represent the corporation here, although in the foreign country where the corporation has been chartered and its chief place of business is, there is another chief officer of such corporation." *McAllister v. Ins. Co.*, 28 Mo. 214. In *Farnsworth v. Railroad Co.*, *Robb v. Railroad Co.*, and *Middough v. Rail-*

*road Co.*, 51 Mo. 520, *supra*, a foreign railroad corporation, having its *chief* office in St. Louis, was held amenable to general process and a general judgment in like manner as a domestic corporation. Now, if it be competent for the legislature to designate in one instance the officer on whom process may be served, assuredly it is competent in all instances where the corporation has an office and does business in this State. It is true that a corporation cannot migrate; cannot change its place of residence ; nevertheless it may transact business, it may incur liabilities, it may sue and be sued, in a jurisdiction other than that in which it is chartered. When it goes into another state and engages in the transaction of business, it goes there with the consent, either expressed or implied, of such state ; it goes there in presumed assent and submission to the laws of that state, which provide for the service of process upon such corporations.

A very strong case on this point is that of *Insurance Co. v. French*, 18 How. 404. The state of Indiana had chartered an insurance company, whose principal office was at Lafayette in that state. The state of Ohio passed a law providing that foreign insurance companies might do business in that state, upon condition of appointing an agent upon whom process could be served. The corporation established an office at Cincinnati, was served with process delivered to its agent, and judgment rendered. Afterward suit was brought in Indiana on the judgment thus recovered, and objection was made that the Ohio court had no jurisdiction over the person sued; that the corporation being created by a law of Indiana, could have no existence out of that state, and consequently could not be sued in Ohio, but the Supreme Court of the United States ruled that the judgment was as valid, and entitled to the same faith and credit under the constitution and laws of the United States, as though rendered in the state where the corporation had its *habitat*. In *Railroad Co. v. Harris*, 12 Wall. 65, Harris brought suit in the supreme court of

the district of Columbia for injuries received. The corporation was chartered by the state of Maryland. The provision of law at the time suit was brought, defining the jurisdiction of the supreme court of the district, was the act of congress providing: " That no action or suit shall be brought before said court by any original process against any person who shall not be an *inhabitant of* or found within said district at the time of serving the writ," and the declaration did not charge the company with being a citizen, resident or inhabitant of the district," but a corporation *    *    " possessing a legal and recognized existence within the limits of the District of Columbia, and exercising therein corporate powers, rights and privileges, in the making of contracts," etc. The company pleaded in abatement that it was not an inhabitant of, and not found in the district where the writ was served. But the suit was held properly brought and the service properly made ; the court, among other things, remarking: "A corporation is in law, for civil purposes, deemed a person ; it may sue and be sued, grant and receive, and do all other acts, not *ultra vires,* which a natural person could do. The chief point of difference between the natural and artificial person is that the former may do whatever is not forbidden by law, the latter can only do what is authorized by its charter. It cannot migrate, but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the law of the place. One of these conditions may be that it shall consent to be sued there. If it do business there, it will be presumed to have assented and will be bound accordingly ;" and the company was held as " liable to suit where the suit was brought in all respects as if it had been an *independent corporation of the same locality."* Similar enunciations were made in *Ex parte Schollenberger,* 96 U. S. 369, and the foregoing decisions approved.

New Jersey has a statute essentially the same as the one we have been discussing, and there it is held that a

general judgment may be rendered against a foreign corporation, sued under the statutory provisions. In Georgia, the Hartford Insurance Company was sued and pleaded to the jurisdiction on the ground of being a resident of the state of Connecticut, and on the ground of not having been served with process. But the court said: "The only difficulty in the way is a practical one. By the common law, process against a corporation must be served upon its president or principal officer. (Angell & Ames, § 404.)     *     *
Nor is it any inherent, fundamental quality in a corporation that process against it should be served upon its principal officer. It is mere matter of municipal law that the state may change at pleasure. We grant to these foreign corporations the right to do business here; we permit them to open offices here; we protect them in the property they hold here; we open our courts to them for the enforcement of the claims they have upon our citizens. Is it hard, or a violation of principle, that they should be put on the same footing as to actions against them as our own corporations?" *Insurance Co. v. Carrugi*, 41 Ga. 660. The other cases cited by plaintiff fully support the position that a foreign corporation, having agents and doing business in another state, is suable in the latter locality by such process served upon the agent of the corporation as such state may prescribe. If the law was not so; if it were out of the power of the legislature to provide suitable process, whereby foreign corporations having officers and agents and doing business in this State, could be successfully sued in ordinary actions like our own corporations are sued, the result would be in many instances a substantial denial of justice. Denied in our own courts the privilege of suing such corporations, our citizens would either have to resort to distant foreign tribunals for redress, or else to abandon all hope of recovery, because the cost of the remedy would far exceed the value of the redress to be obtained, and frequently no relief could be afforded by the foreign court because of the action being grounded on some local law

peculiar to this state. Neither reason nor authority will uphold such an anomalous view. The judgment of the St. Louis court of appeals, as well as that of the circuit court, are reversed and the cause remanded, in order that the same may be proceeded with in conformity hereto. All concur.