SAVANNAH R–III SCHOOL DISTRICT,
et al., Appellants,

v.

PUBLIC SCHOOL RETIREMENT
SYSTEM OF MISSOURI, et
al., Respondents.

No. 79280.

Supreme Court of Missouri,
En Banc.

Aug. 19, 1997.

Rehearing Denied Sept. 30, 1997.

Craig S. Johnson, J. W. Trimmer, Victor S. Scott, Jefferson City, for Appellants.

Allen D. Allred, Lawrence C. Friedman, David A. Dick, St. Louis, J. Kent Lowry, Jefferson City, Christopher T. Hexter, Elliott M. Uchitelle, St. Louis, Diane Howard, Cape Girardeau, for Respondents.

HOLSTEIN, Judge.

This is an appeal from the dismissal of a class action suit brought by various public school districts against the Missouri Public School Retirement System. The school districts sued the retirement system for a refund of overpayments made to the retirement system and for a declaration that a 1996 amendment to the statute on which

contributions were based, sec. 169.030.3,[1] is unconstitutional. The trial court determined that the 1996 amendment to sec. 169.030.3 is constitutional and that the amendment mooted the school districts' claim for a refund. Accordingly, the trial court dismissed the case.

The issue before this Court on appeal is whether the 1996 amendment to sec. 169.030.3 violates several provisions of our state constitution. First, the school districts argue that the amendment violates the constitutional prohibition of retrospective laws. Second, the school districts urge that the amendment unconstitutionally impairs a contract. Third, the school districts argue that the amendment contravenes the constitutional separation of powers. Finally, the school districts contend that the amendment violates the constitutional prohibition of special laws. Because this case involves the validity of a statute, this Court has jurisdiction. Mo. Const. art. V, sec. 3. Section 169.030.3, as amended in 1996, does not violate our constitution in any of the respects raised. The judgment of the trial court is affirmed.

## I.

Defendant, the Public School Retirement System of Missouri, administers a pension plan for teachers working in public school districts with a population under 400,000. Sec. 169.020. The retirement system was created and is governed by secs. 169.010 through 169.141. Plaintiffs are several public school districts representing a certified class consisting of public school district teacher members of the retirement system and employing school districts who contributed retirement funding to the retirement system pursuant to sec. 169.030 after April 3, 1983. There are approximately 573 school districts and 58,000 teachers in the class. Notwithstanding the certification of the class purporting to represent all teachers, several associations representing the interests of retired and active teachers and school adminis-

trators covered by the plan were all permitted to intervene as defendants.[2] In addition, a number of individual active and retired teachers filed a document characterized as a "petition" in which they objected to the relief sought by the school districts and requested decertification of the class.

The retirement system is funded solely through employer and employee contributions. Sec. 169.030.1. Public school teachers contribute a percentage of their "salary rate" to the retirement system. Sec. 169.030.3. Employing school districts match their teachers' contributions. Sec. 169.030.1. Contribution rates are established by the board of trustees of the retirement system within certain limits set forth in sec. 169.030.4. With the collected money and interest derived from its investment, the retirement system pays allowances to retired teachers. Sec. 169.030.1. Upon retirement, teachers may choose from various formulas to determine the amount of their monthly allowance. Sec. 169.070. Retirement benefits are based upon a percentage of the teacher's "final average salary," which is defined as "the total compensation payable to a member for any five consecutive years of creditable service, as elected by the member, divided by sixty." Secs. 169.010(8), 169.070. If a teacher and his or her designated beneficiary die before receiving a full return of the teacher's contributions plus interest, the balance is paid to the teacher's estate. Sec. 169.070.4.

In 1970, the retirement system began notifying school districts that the value of fringe benefits, including health insurance, provided to teachers should be included as part of each teacher's salary rate from which the contribution amount is calculated. Most of the school districts complied with the retirement system's direction.

However, in 1982 the retirement system discovered that some districts were not complying with this direction and were not in-

---

1. All statutory references are to RSMo 1994 with amendments codified in Supp.1996.

2. The following entities were allowed to intervene as defendants: The Missouri State Teaches Association, The Retired Teachers Association of Missouri, The Missouri National Education Asso-

ciation, Cooperating School Districts of St. Louis Suburban Area, The Missouri Association of School Administrators, The Missouri Association of Elementary School Principals, and The Missouri Association of School Board Officials.

cluding fringe benefits in their teachers' salary rates. The retirement system sued these school districts to enforce universal compliance. The circuit court concluded that no justiciable controversy existed because the retirement system had failed to adopt a rule officially promulgating its interpretation of the statute. Accordingly, the circuit court dismissed the suit without prejudice on November 19, 1986.

On December 29, 1987, the retirement system issued a rule, 16 CSR 10–3.010(8), which defined "salary rate" as used in sec. 169.030.3 to include the value of health insurance premiums or annuities purchased in lieu thereof. Consequently, the school districts filed this lawsuit on April 7, 1988, generally seeking declaratory and injunctive relief on the ground that the rule was contrary to sec. 169.030.3. The school districts also sought a refund of prior contributions based upon health insurance benefits. The circuit court certified the case as a class action, upheld the rule, and granted summary judgment in favor of the retirement system.

The judgment of the circuit court was reversed on appeal. *Savannah R–III Sch. Dist. v. Public Sch. Retirement Sys.*, 912 S.W.2d 574 (Mo.App.1995) (per curiam) (Savannah I). In Savannah I, the court of appeals concluded that the term "salary rate" of sec. 169.030.3, RSMo 1994, did not include any fringe benefits such as health insurance or annuities purchased in lieu thereof. The court also found 16 CSR 10–3.010(8) to be arbitrary and contrary to the statute's plain and ordinary meaning. The court of appeals reversed the circuit court's grant of summary judgment and remanded the case for further proceedings. *Id.* at 577.

While the case was pending in the circuit court following remand, the legislature amended sec. 169.010, to redefine the term "salary rate" to specifically include employer paid medical benefits. 1996 Mo. Laws 386. The legislature also added the following language to sec. 169.030.3 in an apparent attempt to put to rest the pending litigation:

Contributions transmitted to the retirement system before the effective date of this act [February 20, 1996], based on salary rates which either included or excluded employer paid medical benefits for members, shall be deemed to have been in compliance with this section. The retirement system shall not refund or adjust contributions or adjust benefitdeterminations with respect to any period before [February 20, 1996], solely because of the treatment of employer paid medical benefits for members.

1996 Mo. Laws 387.

The retirement system filed a motion to dismiss the case on the ground that the 1996 amendment to sec. 169.030.3 mooted the controversy. The school districts filed a third amended petition, which added challenges to the constitutionality of the 1996 amendment and sought a declaration of rights and duties. The school districts then filed a motion for summary judgment as to its constitutional challenges to the 1996 amendment. Upholding the constitutionality of sec. 169.030.3, as amended in 1996, the circuit court denied the school districts' motion for summary judgment and granted the retirement system's motion to dismiss. Upon judgment for dismissal, this appeal was taken.

## II.

■ The school districts argue that the 1996 amendment to sec. 169.030.3 impairs an obligation of contract in violation of article I, sec. 13 of the Missouri Constitution. This argument lacks merit. There is no contractual relationship between the retirement system and the school districts. Any legal obligation between the retirement system and the school districts is purely statutory.

■ The school districts further argue that the amendment to sec. 169.030.3 unconstitutionally impairs a contractual relationship existing between the teacher class members and the retirement system. We need not address the merits of this argument. Plaintiffs lack standing to assert the rights of teachers because all of the representatives of the class are school districts.[3] Named plain-

---

3. Several organizations representing individual class members were permitted to join the suit as

intervenor defendants to oppose the relief requested by the school districts and to seek decer-

tiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other members of the class which they purportedly represent. *Harris v. Union Elec. Co.,* 766 S.W.2d 80, 86 n. 10 (Mo. banc), cert. denied, 492 U.S. 919, 109 S.Ct. 3245, 106 L.Ed.2d 592 (1989).

### III.

Article I, sec. 13 of the Missouri Constitution also prohibits the enactment of any law "retrospective in its operation." The school districts contend that the 1996 amendment to sec. 169.030.3 violates this constitutional provision.

 Because the retrospective law prohibition was intended to protect citizens and not the state, the legislature may constitutionally pass retrospective laws that waive the rights of the state. *State ex rel. Meyer v. Cobb,* 467 S.W.2d 854, 856 (Mo.1971); *Graham Paper Co. v. Gehner,* 332 Mo. 155, 59 S.W.2d 49, 51–52 (banc 1933). All of the representative plaintiffs are school districts. "School districts are bodies corporate, instrumentalities of the state established by statute to facilitate effectual discharge of the General Assembly's constitutional mandate to establish and maintain free public schools...." *State ex rel. Independence Sch. Dist. v. Jones,* 653 S.W.2d 178, 185 (Mo. banc 1983) (quotation omitted). As "creatures of the legislature," the rights and responsibilities of school districts are created and governed by the legislature. *Id.* Hence, the legislature may waive or impair the vested rights of school districts without violating the retrospective law prohibition. *Dye v. School Dist. No. 32,* 355 Mo. 231, 195 S.W.2d 874, 879 (banc 1946). The analysis of this constitutional claim would be different had any one of the named parties been a teacher.

### IV.

The school districts contend that the 1996 amendment to sec. 169.030.3 is a legislative

encroachment on the judicial function, violating the separation of powers doctrine.

 Section 169.030.3 does not contravene any final adjudication of a court of this state and, therefore, the amendment does not violate the doctrine of separation of powers. See *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 225–27, 115 S.Ct. 1447, 1456–57, 131 L.Ed.2d 328 (1995); see also, *McNichol v. United States Mercantile Reporting Agency,* 74 Mo. 457, 471 (1881) (declaring that separation of powers prohibits the legislature from revising or overturning the "solemn adjudications" of the judiciary). A final judicial decision resolving an issue is the last word of the judicial department with regard to a particular case or controversy. The separation of powers principle prevents the legislature from declaring that the law applicable in a specific case is something different than what the courts have finally decided. However, if a court has not yet finally adjudicated an issue in a pending case, even a retroactive amendment to the governing law does not constitute a separation of powers violation. See *Plaut,* 514 U.S. at 225–27, 115 S.Ct. at 1456–57.

 In Savannah I, the court determined only that the pre-amendment version of sec. 169.030.3 did not authorize the retirement system to collect contributions based on health care benefits. From that holding it does not follow, a fortiori, that the plaintiff school districts had a final adjudication giving them a right to refund of such contributions. The school districts urge the Court to interpret the entire 1996 statutory amendment as an attempt to undo the court's decision in Savannah I. That is one conceivable interpretation of the first sentence of the statute. However, both sentences must be read together. In addition, this Court must presume that the statute is constitutional. *Beatty v. State Tax Comm'n,* 912 S.W.2d 492, 495 (Mo. banc 1995). Furthermore, ambiguous statutes that are susceptible to more than one construction should be construed in a manner consistent with the constitution.

tification of the class. However, the circuit court dismissed the suit as moot without addressing their objections to class certification. Therefore, this Court need not address the question of

whether this class was properly certified under Rule 52.08 because that question is not before us on appeal.

*M & P Enterprises, Inc. v. Transamerica Fin. Servs.*, 944 S.W.2d 154, 159 (Mo. banc 1997). Applying those principles to the instant case, the two sentences together have the purpose not to undo Savannah I, but, simply to declare that there shall be no refunds of past contributions based on employer provided medical benefits. Because the amended version of sec. 169.030.3 does not abrogate any final adjudication in Savannah I, it does not violate the separation of powers requirement.

■ While the judicial power is mentioned in Missouri Constitution article II, sec. 1, and article V, sec. 1, its precise outlines are not defined. A constitutional provision is interpreted according to the intent of the voters who adopted it. *Keller v. Marion County Ambulance Dist.*, 820 S.W.2d 301, 302 (Mo. banc 1991). The provisions separating the judicial function from the legislative was not intended to protect turf claimed by judges. Neither was the doctrine intended to prevent all laws that are retrospective in their operation. If that were the case, the provision prohibiting retrospective laws would be a meaningless redundancy. Finally, the separation of powers doctrine was never intended to prohibit statutes designed to resolve legal disputes between two statutory instrumentalities of government. The reason for the separation of powers is to protect the liberty and security of the governed. See *Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 272, 111 S.Ct. 2298, 2309–10, 115 L.Ed.2d 236 (1991). In the context of a claimed impingement of the judicial function by the legislature, it is the citizens' rights, established either by a specific provision in the constitution or by a final adjudication in a court of law, that are protected from legislative diminution. By this standard, the school districts have not demonstrated an encroachment on the judicial function.

Citing McNichol, the school districts argue that any enactment retroactively declaring the law is invalid as a violation of the separation of powers doctrine. See *McNichol*, 74 Mo. at 471. ("[L]egislative action cannot be made to retroact upon past controversies, and to reverse decisions which the courts, in the exercise of their undoubted authority, have made."); see also *Kern v. Supreme Council Am. Legion of Honor*, 167 Mo. 471, 67 S.W. 252, 255 (1902) ("The 31st general assembly had the power to prescribe what the law should be thereafter, but it was the province of the courts, and not of that session of the assembly, to say what the law was before that time."). In neither McNichol nor Kern did the Court hold a retroactive statute unconstitutional because the legislature violated the separation of powers doctrine. The Kern case in particular, read in its entirety, stands for no more than a restatement of the general rule, discussed in Part III, that statutes affecting vested rights are presumed to be prospective.

V.

Finally, the school districts contend that the 1996 amendment to sec. 169.030.3 violates article III, sec. 40(25), which prohibits the enactment of any "special law" that legalizes an unauthorized or invalid act of any state officer or agent.

■ A "special law" is a law that "includes less than all who are similarly situated ... but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *Batek v. Curators of the Univ. of Mo.*, 920 S.W.2d 895, 899 (Mo. banc 1996) (omission in original) (quoting *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 831 (Mo. banc 1991)). "In essence, the test for 'special legislation' under article III, sec. 40, of the Missouri Constitution, involves the same principles and considerations that are involved in determining whether the statute violates equal protection in a situation where neither fundamental right nor suspect class is involved, i.e., where the rational basis test applies." *Blaske*, 821 S.W.2d at 832.

The school districts argue that the 1996 amendment impermissibly imposes disparate treatment on those districts that contributed to the retirement system based on medical benefits when not required to do so by law. The school districts contend that in this regard the amendment violates the special laws prohibition because it arbitrarily and unreasonably calls for dissimilar treatment of two groups who are similarly situated.

It is true, as the school districts argue, that the amendment results in different treatment for those school districts that made overpayments to the retirement system from those that did not. However, this classification is rationally related to several legitimate governmental objectives. First, the legislative enactment may have been an equitable response to those teachers who detrimentally relied on their school district contributions by retiring or planning for their retirement. Second, some excess contributions will already have been distributed to retired or deceased teachers. The legislature may have recognized that many of these distributions will be unrecoverable. To require the retirement system to refund such contribution to school districts would result in an unplanned and inequitable depletion of the retirement fund to the detriment of all teachers covered under the plan. Finally, the legislature may have determined that it was in the public's interest to end the expenditure of time, money and energy on intragovernmental litigation and to refocus the school districts on educating youth and the retirement system on administering the pension plan.

Each of the above is a rational basis for the enactment of the amended sec. 169.030.3. Thus, there is no violation of the "special legislation" prohibition of article III, sec. 40.

## VI.

The 1996 amendment to sec. 169.030.3 does not violate our state constitution in any of the respects raised by the school districts. The judgment of the trial court is affirmed.

COVINGTON, J., and SMITH and CRAHAN, Special Judges, concur.

PRICE, J., concurs in result.

ROBERTSON, J., dissents in separate opinion filed.

LIMBAUGH, J., concurs in separate opinion of ROBERTSON, J.

BENTON, C.J., and WHITE, J., not sitting.

ROBERTSON, Judge, dissenting.

But for the majority's discussion of the provisions of article I, section 13, prohibiting laws retrospective in operation, I would agree with what the majority says. Because I do not agree with the analysis contained in section III of the majority opinion, I respectfully dissent.

The majority neatly avoids a discussion of the merits of the constitutional prohibition against retrospective laws by holding that school districts may not raise a challenge to an act of the legislature. This is because, the majority reasons, the school districts are instrumentalities of the state and the state can waive its own rights.

The majority's reasoning rests on two broad, unstated, but intertwined principles: First, that an entity created by the people with the consent of the legislature is the state for purposes of legal challenges to legislation that violates article I, section 13. Second, that the legislature with the assent of the governor may choose to ignore an absolute prohibition to certain kinds of legislative action in the constitution when the constitution creates an obstacle to the legislature's will.

As to the first proposition, the majority finds support *in State ex rel. Independence School District v. Jones*, 653 S.W.2d 178 (Mo. banc 1983). "School districts are bodies corporate, instrumentalities of the state *established by the statute* to facilitate effectual discharge of the General Assembly's constitutional mandate to establish and maintain free public schools...." (Emphasis added.) *Id.* at 185. This statement is not entirely correct. School districts are not established by the legislature. Six-member school districts are *permitted* by the legislature. Section 162.211, RSMo 1994, provides that "[a] six member school district *may be established* by the voters of (1) any city or town...." (Emphasis added.) The plaintiff school districts in this case are local government entities created by local voters "as authorized in Section 162.211." They are not directly-created instrumentalities of the state as would be, for instance, the department of elementary and secondary education. In formation and purpose, the plaintiffs are more municipal corporations than they are state entities. Of course, one could argue that

municipal corporations are state instrumentalities, too. If one follows the majority, municipalities cannot challenge the legislature's enactment of laws retrospective in operation, either. But do we really want to say that? I think not. Local governments exist as much to insulate citizens from distant government as to carry out the state's duties. Charter cities authorized by the constitution have all powers that the state does not deny them by law. But based on the majority's prose, there is no logical firewall that prohibits the majority's holding from extending to cities and counties.

Even if one takes *Jones* as good law on the establishment point, one need only turn the page of the *Jones* opinion to discover that *Jones* assumes a broader legal role for school districts than does the majority. Here is the rest of what *Jones* says:

> From the cases it is apparent the rule in this state has been that absent legislation to the contrary and so long as in furtherance of its duties a school district is empowered to initiate any action that would be available to a private individual in the same circumstances. This action [to challenge the state tax commission's procedure for determining "percent of true value"] is indisputably in furtherance of plaintiffs' duties, and were plaintiffs private individuals, it would be said that they have a legally protectible interest at stake. Plaintiff school districts are direct beneficiaries of the statutory right to certain portions of appropriate state school funds.

*Id.* at 186. Surely the plaintiff school districts—created at the option of the local citizenry and receiving not only state money but local tax revenue to support their operations—have a legally protectible interest in paying only so much of their state funds/local tax revenues to the public school retirement system as the law requires. And surely they have a legally protected interest in pursuing a remedy under the now-final judgment these plaintiffs obtained that the retirement system had violated the law in requiring these plaintiffs to contribute an amount calculated under an illegal regulation that included health benefits in the salary base. *See Savannah R–III School District v. Public School Retirement System,* 912 S.W.2d 574 (Mo.App.1995).

The majority admits that its analysis "would be different had any one of the named parties been a teacher." (Op. at 859). Under *Jones,* that ends the inquiry. The school districts can sue because an individual could pursue the remedy.

The second proposition that lurks beneath the surface of the majority's holding is much more troubling. According to the majority and the cases on which it relies, the state can waive the application of unequivocal constitutional provisions prohibiting certain kinds of legislation if it chooses to do so.

This is troubling because the plain language of the constitution is so contrary to the majority's position. Article I states:

> In order to assert our rights, acknowledge our duties, and **proclaim the principles on which our government is founded,** we declare:
>
> \* \* \* \* \* \*
>
> Section 13. That **no** ___ law ___ retrospective in its operation ___ can be enacted.

(Emphasis added.) Mo. Const. art. I, sec. 13.

The language of the constitution is clear. It admits no exceptions nor does it permit the legislature to waive its limitations for any purpose. Yet, the majority declares that this principle upon which Missouri government is founded does not limit the legislature except when the legislature legislates in a manner directly affecting citizens.

No person voting to adopt this provision of the constitution would believe what the majority says this language permits. No person would assume that the word "no" really means "sometimes the legislature may." And yet, that is where this case leads us by relying on judicial creations that feed off one another while ignoring the constitution's plain words.

And are those judicial creations the sort that ought to recited by rote, especially in light on the plain language of the constitution? A brief look at the history of the exception upon which the majority relies reveals its questionable parentage.

In 1877, the United States Supreme Court decided that a provision of the Louisiana constitution prohibiting retrospective laws did not apply "to legislation recognizing or

affirming binding obligations of the State." *New Orleans v. Clark,* 95 U.S. 644, 655, 24 L.Ed. 521 (1877). Although one wonders on what authority the United States Supreme Court claimed to interpret purely state constitutional provisions, the statement apparently recognizes without explicitly saying so, that under the federal constitution, a state could not adopt legislation "impairing the obligation of contracts." U.S. Const. art. I, sec. 10, cl. 1. That this is so is beyond serious argument.

This Court's opinion in *Graham Paper Co. v. Gehner,* 332 Mo. 155, 59 S.W.2d 49, 51–2 (banc 1933), is the lynchpin of the majority's position in this case. *Gehner* offers no analysis of the Missouri constitutional prohibition against retrospective laws. Instead, it adopts without critical assessment the dicta in *New Orleans v. Clark* and cites *Corpus Juris.* The majority also cites *State ex rel. Meyer v. Cobb,* 467 S.W.2d 854, 856 (Mo. banc 1971). *Cobb* merely cites *Gehner* and *Corpus Juris,* and *Corpus Juris Secundum,* the last of these being an update of *Corpus Juris.*

***Stare decisis*** serves exceedingly well in most instances. Precedent should be given the benefit of the doubt when applied as a product of a reasoned process. But as this case shows, terse, blind acceptance of precedent proves too incestuous when the people's constitution is at stake.

There exists a second line of cases that say that the retrospective operation prohibition does not apply unless the law affects a past transaction or vested right. *See Hope Mutual Ins. Co. v. Flynn,* 38 Mo. 483, 484 (1866); *Andres v. Alpha Kappa Lambda Fraternity,* 730 S.W.2d 547, 552 (Mo. banc 1987). If one were to apply this line of cases, which reasoned *stare decisis* would dictate we do, the plaintiffs in this case would remain in court. This is because the new statute terminates their pre-existing, vested right to maintain an action for monies had and received. *Palo v. Stangler,* 943 S.W.2d 683, (Mo.App.1997).

Thomas Jefferson described a written constitution as a "peculiar security." He supposed that committing a constitution to writing and placing it where all could consult its text might protect the nation and its inhabitants against persons holding interpretive office who might otherwise ignore fundamental precepts in favor of the pressures of expediency and the demands of personal preference. Jefferson's notion apparently rested on the yet-untested hope that the American judiciary would prefer the intention of the people expressed in the words of their constitutions over the acts of their agents conspiring in legislative bodies. The cases on which the majority opinion relies are evidence enough that Jefferson's hope held no long-term promise.

I would employ the unambiguous words of the constitution—not the policy creations of judges—to determine the meaning of the constitution. In employing that standard, it is apparent that section 169.030.3 applies to transactions that took place prior to the effective date of the statute. This is definitionally a law retrospective in operation that affects a vested right. Since the constitution permits no such law, I would declare section 169.030.3 unconstitutional and would permit the school district plaintiffs in this case to continue their efforts to recover monies paid the retirement system under an unlawful regulation.