AMERICAN FAMILY MUTUAL
INSURANCE CO., Plaintiff,

v.

Kristie FEHLING, Respondent,
et al., Respondents,

Missouri Dept. of Social Services Division
of Medical Services, Appellant.

Nos. WD 53662, WD 54139.

Missouri Court of Appeals,
Western District.

May 26, 1998.

Michael S. Kisling, Jefferson City, for appellant.

William A. Atkinson, Columbia, for Rehling.

Gary G. Sprick, Feyette, for Canaday.

Louis J. Leonatti, Mexico, for American Family.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

RIEDERER, Judge.

## FACTS

This is a consolidated appeal of two separate Randolph County Circuit Court cases, involving two separate claims for injuries. In each case, American Family Mutual Insurance paid money as part of a settlement of the claim without trial, and the Missouri Department of Social Services, Division of Medical Services (DMS) claimed a lien under Section 208.215 RSMo (1994). In each case, the trial court reduced the amount of the lien claimed by DMS, pursuant to Section 208.125 RSMo (1996). In each case, DMS claims the trial court erred in applying the 1996 version of this statute instead of the earlier version. Section 208.215 was amended in 1996, and the amendment was effective August 28, 1996. Each lawsuit was filed before the effective date of the new statute, and in each case, the hearing requested under Section 208.215 RSMo (1996) took place after the effective date of the amendment.

## PROCEDURAL HISTORY

### A. Facts of the Fehling Appeal

Kristie Fehling was injured in an automobile accident on March 10, 1995. As a result of this accident, two people were killed, and

Kristie Fehling and a fourth person were injured. The insurance carrier for the putative defendant in her claim for injuries was American Family. On January 17, 1996, American Family filed a "Petition in Interpleader" in the Circuit Court of Randolph County. The Petitioner sought an order of the circuit court "making an appropriate award and distribution of the insurance policy's coverage." American Family alleged that its policy provided liability coverage for bodily injury of $50,000.00 per person and $100,000.00 per occurrence.

Medical expenses of Kristie Fehling were alleged to be in excess of $142,000.00 and those of the other injured party were $44,-265.60. American Family requested the court to order it to pay $100,000.00 into the registry of the court and to be thereafter released from further liability.

On July 24, 1996, the circuit court entered its order which, *inter alia*, ordered American Family to pay $100,000.00 into the registry of the court and relieved American Family of further liability under the policy. On August 21, 1996, DMS entered its appearance and filed a "Motion to Intervene." That same day, DMS filed a "Notice" that its Motion to Intervene would be called up for hearing on September 6, 1996. DMS also filed its "Answer in Intervention." On September 6, 1996, the trial court held a hearing. The amount of insurance proceeds available to Kristie Fehling was $35,000.00.

On September 27, 1996, the trial court issued its judgment finding that Section 208.215 RSMo (1996), effective August 28, 1996, governed this suit, and the court recited that it had considered the six factors set out in Section 208.215.9. The court approved the DMS lien but reduced the amount of the lien from $15,818.04 to $4,730.78. On October 18, 1996, DMS filed its "Motion for a New Trial." The motion was overruled on November 26, 1996. On December 4, 1996, DMS filed notice of appeal.

### B. Facts of the Canaday Appeal

On October 11, 1993, Carrie L. Canaday (Date of Birth November 1, 1986) was a passenger in a car, driven by her mother, when the car left the road and flipped. The

car was insured by American Family Mutual Insurance Company. Carrie Canaday was injured as a result of that collision, sustaining a broken right femur, a fractured pelvis, and multiple lacerations. She was taken to the hospital by helicopter and required surgery.

On August 30, 1995, American Family filed a "Petition in Interpleader of Settlement," in the Circuit Court of Randolph County. American Family recounted the above facts, listed medical bills totaling $40,873.66, and alleged that DMS had asserted a lien for $24,760.50. American Family's policy provided liability coverage in the amount of $25,000.00 per person and $50,000.00 per occurrence. It was the only liability insurance available to satisfy all the claims. American Family asked the Court for an order directing it to pay $25,000.00 into the registry of the court and relieving it of further liability.

On November 8, 1995, DMS filed its "Answer and Cross–Claim," alleging it was an agency of the State and that it paid $24,760.50 to medical providers on behalf of Carrie L. Canaday. DMS further alleged it was asserting its rights under Section 208.215 RSMo to recover the hospital and medical expenses paid. DMS prayed the court to order that $24,760.50 of the $25,000.00 available be paid to DMS.

On July 23, 1996, Carrie Canaday filed an "Answer to Plaintiff's Petition" and "Answer to the Cross–Claim." Canaday alleged that the injuries she had suffered and her pain and suffering greatly exceeded the monies paid into court and prayed for the monies paid into court to be paid to her. On December 13, 1996, Canaday filed a "First Amended Answer and Counterclaim." She requested a hearing regarding the lien pursuant to Section 208.215 RSMo (1996) and for an order awarding to her the money paid into the court and for fees to the Guardian *ad litem* and her attorney and that if DMS got any of the money, it should bear a *pro rata* share of those fees.

On December 13, 1996, the trial court held a hearing and on January 16, 1997, entered its judgment. The court found "that the fund upon which the lien of Missouri Department of Social Services attached came into existence on 12–13–96, and is thus subject to Section 208.215 RSMo 1996." The Court noted that it had "considered the seriousness of the injuries sustained by minor Defendant Carrie L. Canaday, including severe visible scarring of her hand, pin scars on her thigh, residual pain on movement of her operative leg." The court concluded that Canaday's known medical damages exceeded $25,000.00 and that, of the $25,000.00 available, $12,000.00 should be paid to DMS "in satisfaction of its lien for medical payments on behalf of minor Defendant under Section 208.215." The court concluded that DMS should bear some of the cost of Guardian *ad litem* fees and attorney fees and ended up awarding to DMS $11,500.74. Notice of appeal was filed February 21, 1997.

The Fehling case and the Canaday case were consolidated on appeal.

## THE ISSUES ON APPEAL

Appellant DMS raises four issues. First, DMS claims the trial court erred by applying the 1996 version of Section 208.215 instead of the earlier version of the same section. DMS claims that this action by the trial court was an unconstitutional and unlawful retrospective application of the statute, in violation of Article I, Section 13 of the Missouri Constitution. DMS claims this is so because the crucial events that created a liability to pay the liens occurred before the effective date of Section 208.215.

Second, DMS claims that the trial court erred in ordering a reduction in the liens because there was insufficient evidence in each case to support a reduction. DMS claims each injured party failed to meet the burden of proving the elements set out in the 1996 version of Section 208.215.9.

Third, DMS claims that the trial court erred because it ignored the mandatory language of Section 208.215.9 RSMo (1996) that the trial judge is required to consider all six factors enumerated in that section. DMS claims the court could not have considered some of these factors because there was no evidence of them.

Fourth, DMS claims the trial court erred in considering evidence regarding the settlement negotiations between the parties.

## I. Retrospective Application Of The Statute

Appellant DMS claims the trial court erred by applying the 1996 version of Section 208.215 instead of the earlier version of the same section. It claims that this action by the trial court was an unconstitutional and unlawful retrospective application of the statute, in violation of Article I, Section 13 of the Missouri Constitution. It claims this is so because the crucial events that created a liability to pay the liens occurred before the effective date of Section 208.215.

### A. Article I, Section 13 of the Missouri Constitution

Article I, Section 13 of the Missouri Constitution reads: "That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted." By its terms, our constitution declares that "no law retrospective in its application can be enacted." Appellant claims that the trial court's rulings in these two cases made Section 208.215 RSMo (1996) "retrospective in its application."

### B. General Rule and Exceptions

■ Missouri's case law makes it clear that Article I, Section 13 of the Constitution prohibits any law that attaches new disabilities to past transactions or impairs the vested rights of a party. *State v. Thomaston,* 726 S.W.2d 448, 459–60 (Mo.App.1987).

■ Most of the cases cited by the parties recite that there are two exceptions to this prohibition: (1) where the legislative intent is clearly manifested that the section is to be applied retroactively; and (2) where the statute is procedural only and does not affect any substantive right. *See e.g., State Bd. of Registration v. Warren,* 820 S.W.2d 564, 565–66 (Mo.App.1991). A third exception is recognized; the legislature may constitutionally pass retrospective laws that waive the rights of the state. *Savannah R–III v. Pub. School Ret. Sys.,* 950 S.W.2d 854, 858 (Mo. banc 1997).

### C. Standard of Review

■ On appeal of a court-tried case, we must sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Here, Appellant claims the trial court erroneously declared and applied the law. Statutory construction is a question of law, not fact; where the lower court rules on a question of law, it is not a matter of discretion. *State v. Ruch,* 926 S.W.2d 937, 938 (Mo.App.1996). If the law has been erroneously declared or applied, the judgment of the trial court is afforded no deference. *Id.*

"All canons of statutory interpretation are subordinate to the requirement that the Court ascertain the intent of the legislature from the language used and give effect to that intent, if possible, and to consider the words in their plain and ordinary meaning." *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 19 (Mo. banc 1995). Statutes are construed in such a way as to avoid unreasonable, oppressive, or absurd results. *State v. Sledd,* 949 S.W.2d 643, 645 (Mo.App.1997). Provisions of the entire legislative act must be construed together and, if reasonably possible, all provisions must be harmonized. *Hagely v. Board of Educ.,* 841 S.W.2d 663, 667 (Mo. banc 1992).

■ We now turn to an examination of whether any of the three exceptions to the constitutional prohibition apply to this case. First, we address whether the legislative intent is such that the law should not be applied as it was by the trial court. We then address whether this is a substantive or procedural law. Finally, we will analyze the applicability of the third exception, which establishes that the legislature may constitutionally waive a vested right of the state.

### D. Legislative Intent

Appellant argues that the legislative intent prohibits the application given this statute by the court below.

■ Missouri courts presume that a statute is to operate prospectively "unless the

legislature specifically provides that the statute have retroactive effect." *Warren,* 820 S.W.2d at 565. Missouri courts have also expressed the rule that a statute will be applied retroactively in the absence of express language providing for such application if it is necessary by "unavoidable implication." *Dept. of Soc. Serv. v. Villa Capri Homes,* 684 S.W.2d 327, 332 (Mo. banc 1985).

In Section 208.215 RSMo (1996), the legislature used no express language indicating its intent that the statute be applied retroactively, nor do we find an unavoidable implication that the statute be applied retroactively.

DMS argues that the phrase "the department ... *shall have* a lien on any monies *to be paid* ...." is the future tense and therefore mandates prospective application only, citing *Gershman Inv. v. Duckett Creek Sewer Dist.,* 851 S.W.2d 765 (Mo.App.1993). However, the statutory language at issue in *Gershman* included the phrase "should a lien be placed" in addition to "lien shall have priority." *Id.* at 766. By contrast, in our case, there is no use of the term "should." The use of the phrase "should a lien be placed" is unmistakably the future tense. But that language is not present in our case. Section 208.215 uses the term "shall," which is mandatory language. In fact, Appellant argues that "shall" is mandatory language in a later part of its argument. As used in Section 208.215.8 (1996), "shall" does not unmistakably indicate prospective intent only—any more than it indicates mandatory language.

Moreover, Appellant left out the rest of the quoted phrase, which goes on to say "... shall have a lien upon any monies to be paid *in settlement or satisfaction of a judgment.* ..." (Emphasis added). Both the 1994 and the 1996 versions of the statute contain the same language. The legislative intent was clear that this lien was intended to operate against a "settlement ... of a judgment" or against a "satisfaction of a judgment." On August 27, 1996, the date when the previous version of Section 208.215 expired, there was no judgment, and there were no monies to be paid in settlement or satisfaction of a judgment. When the new version of Section 208.215 came into effect on August 28, 1996,

the language relied on by DMS was unchanged; and there still was no judgment and "no monies to be paid in settlement or satisfaction of a judgment."

In each case, a judgment was entered at a later date. In the *Fehling* case, a judgment was entered on September 26, 1996. In the Canaday case, a judgment was entered on December 13, 1996. When the judgments were entered in both of these cases and the monies to be paid in settlement or satisfaction of the judgments became available, the statute in effect was the newer version of Section 208.215. The statutory language creating the lien was the same in both versions of the statute. In both versions, the lien was a charge against monies to be paid in settlement or satisfaction of a judgment. We conclude that the legislature intended merely that the court apply the version of Section 208.215 in existence at the time when the judgment is entered and there are made available monies to be paid in settlement or satisfaction of a judgment. Under the facts of the two cases within this appeal, the legislature intended that the trial court apply Section 208.215 RSMo (1996).

This same conclusion can be drawn from a reading of Section 208.215 (1996) and its amendments in full context. The legislature amended subsections (7) and (8) of Section 208.215 in 1996.

Subsection (7), in its previous form, read: "The department director shall have a right to recover the full amount of payments made ... because of an injury ... for which a third party is or may be liable...." The amended version of subsection (7) reads: "The department director shall have a right to recover the amount of payments made ... because of an injury ... for which a third party is or may be liable...." The only amendment was that, as of August 28, 1996, the department director had a right to recover "the amount of payments made" instead of "the full amount of payments made."

This amendment was only one part of a series of amendments on this issue. Subsection (8) was amended as well. The prior version of subsection (8) provided:

"The department ... shall have a lien upon any monies to be paid ... in settlement or satisfaction of a judgment on any claim for injuries ... which resulted in medical expenses for which the department made payment. This lien shall also be applicable to any monies which come into the possession of any attorney...."

All of this language survived into the amended statute. The remainder of the earlier version of subsection 8 provided that "no such lien shall be effective unless a written notice ... is sent by the department ... to the attorney ... and [others] ... prior to the payment of any monies...." This qualifying sentence was removed and replaced with three new sentences, the first two dealing with a "lien notice," which is required (1) to be served on "the party ... against whom the applicant has a claim ...."; and (2) to "claim the charge and describe the interest the department has...." The last sentence of the amended subsection 8 provides: "The lien shall attach to any verdict or judgment enforced and to any money or property which may be recovered on account of such claim...."

Subsection (7) deals with a statutorily granted "right to recover." The 1996 amendment changed this "right to recover" from "the full amount paid" to "the amount paid." Regardless of the "right to recover," the mechanism for that recovery is a lien, and that lien is created by subsection (8). In both the 1994 and the 1996 version, subsection (8) provides that Appellant "... shall have a lien upon any monies to be paid ... in settlement or satisfaction of a judgment...." The legislative intent is clear that the lien is not enforceable until there are "monies to be paid ... in settlement or satisfaction of a judgment...." The addition of the last sentence in subsection (8) (noted above) makes this intent even more clear: the legislature added to the amended statute the provision that the lien "shall attach" to a "verdict or judgment entered." In both of the cases in this appeal, there were no "monies to be paid in settlement or satisfaction of a judgment" until after August 28, 1996. Furthermore, there was no "judgment entered" until after August 28, 1996. The legislature intended

that this lien would not be created and would not attach until there was a judgment, which in both of these cases, was after August 28, 1996.

The "right to recover" under subsection 7 is further limited by subsection 4 of Section 208.215. Subsection 7 provides that the director shall have a right to recover the amount of payments made because of an injury for which a third party is or may be liable. Subsection 4 provides that "Every applicant or recipient by application assigns his right to the department of any funds recovered or expected to be recovered to the extent provided for in this section." The legislature has made it clear that the director has a "right to recover" and that this "right to recover" is derivative: the director only has that right which the applicant or recipient has assigned to him. Furthermore, that assigned right only operates "to the extent provided for in this section." This latter limiting language appears in both versions of the statute. Thus, as of August 28, 1996, the "right to recover" which the director had acquired by assignment was operative only "to the extent provided for in this section." If the legislature had intended for the earlier version of this section to continue to be operative in certain cases, it could have provided for that. However, the legislature did not do so. Instead, the legislature provided that this "right to recover" continued to be limited "to the extent provided for in this section" while at the same time providing, in this section, (1) not for recovery of the "full amount" but rather for recovery of the "amount," and (2) for enforcement of the right to recover by a statutory lien, and (3) for a procedure by which a court could reduce that lien. The legislature intended that as of August 28, 1996, the "right to recover" assigned to the state was enforceable by a lien, which lien could be reduced if so ordered by a court following the proper procedure.

### E. Procedural or Substantive

Appellant next contends that the 1996 revision of 208.215 was substantive in nature because it affected substantive rights. Respondents counter that the change was pure-

ly procedural and that Appellant's substantive rights did not change after the revision of the statute; they contend that under both the 1994 and 1996 version of Section 208.215 RSMo, Appellant has (1) the right to establish a lien on insurance proceeds paid to a person who has received Medicaid benefits; (2) the right to be reimbursed; and (3) an established mechanism to obtain a lien on proceeds to be paid to a recipient. Finally they assert that the revision "simply conferred upon the court the right to hold a hearing to determine how the monies should be divided."

 In retroactivity analysis, "substantive law relates to the rights and duties giving rise to the cause of action. . . ." *Wilkes v. Mo. Highway and Transp. Com'n,* 762 S.W.2d 27, 28 (Mo. banc 1988). "Substantive statutes take away or impair vested rights acquired under existing law, or create a new obligation or impose a new duty." *Brennecka v. Director of Revenue,* 855 S.W.2d 509, 511 (Mo.App.1993). Alternatively, a statute is procedural or remedial in nature if it "prescribes a method of enforcing rights or obtaining redress for their invasion. . . ." *Wilkes,* 762 S.W.2d at 28. Remedial laws usually affect only the remedy provided, and include laws that "merely substitute a new or more appropriate remedy for the enforcement of an existing right." *Faulkner v. St. Luke's Hosp.,* 903 S.W.2d 588, 592 (Mo.App.1995). A statute that is remedial or procedural operates retrospectively unless the legislature expressly states otherwise. *Vaughan v. Taft Broadcasting Co.,* 708 S.W.2d 656, 661 (Mo. banc 1986).

The cause of action and the rights afforded DMS under the prior and amended Section 208.215 are the same; DMS has the right to bring an action to recover benefits paid when a Medicaid recipient receives compensation from a third party for health services incurred due to personal injury, disability or disease. Thus, DMS's "substantial right to redress by some effective procedure" has been preserved. *Id.* at 660 (*quoting Gibbes v. Zimmerman,* 290 U.S. 326, 332, 54 S.Ct. 140, 78 L.Ed. 342 (1933)). The only difference between the two versions lies in the remedy allowed to DMS. When DMS makes

payments for an injury and the recipient later recovers money from a third party, the original DMS payment still becomes a debt due to DMS; however, the trial court now has the discretion to reduce DMS's portion of the recipient's recovery after consideration of the six factors listed in Section 208.215.9. The amended statute substituted a more appropriate remedy for the enforcement of DMS's existing right in its cause of action to recover public assistance benefits paid. Therefore, the amended statute is remedial.

### F. The Legislature May Constitutionally Waive the Rights of the State

Even if this statute were not remedial, a third exception to the general rule against retrospective statutes allows the legislature constitutionally to waive the rights of the state. *Savannah R–III,* 950 S.W.2d at 858. In the *Savannah R–III* case, school districts sued the retirement system over whether retirement contributions should be based on a salary rate that includes employer paid medical benefits. While the dispute was still in the courts, the legislature amended the statute to redefine the term "salary rate" to include employer paid medical benefits. On the basis of the new law, the circuit court granted the retirement system's motion to dismiss. The school districts appealed, arguing this application of the new law was a violation of Article 1, Section 13 of the Missouri Constitution and was "retrospective in its application." The Missouri Supreme Court noted that "the retrospective law prohibition was intended to protect citizens and not the state." *Id.* The Court held that "[t]he legislature may constitutionally pass retrospective laws that waive the rights of the state." *Id.* The Court went on to explain: "As creatures of the legislature, the rights and responsibilities of school districts are created and governed by the legislature. (Citations omitted). Hence the legislature may waive or impair the vested rights of school districts without violating the retrospective law violation." *Id.*

 In our case, Appellant is an agency of the State of Missouri. Its powers are governed by the legislature. Hence, the legisla-

ture may waive or impair the vested or substantive rights of Appellant. *Ibid.*

In sum, then, while the legislature did not expressly or implicitly state that it intended for this statute to apply retrospectively, the purpose of the statute was remedial, and the statute can therefore be applied retroactively. In addition, even if the statute were not remedial, the legislature may constitutionally impair the state's vested or substantive rights, as it did in this case. The judgment of the court below did not violate Article I, Section 13 of the Missouri Constitution.

Therefore, Point I is denied.

## II. Evidence Sufficient To Support Reduction Under 208.215.9 (1996)

Appellant DMS contends that, even if Section 208.215 RSMo (1996) applies, the trial court was required to consider all six factors under Section 208.215.9 RSMo (1996) and that Respondents failed to prove all six factors. Specifically, Appellant argues that Respondents did not prove the fourth, fifth and sixth elements listed in Section 208.215.9 RSMo (1996).

When the legislature amended Section 208.215 in 1996, it added four new subsections: (9), (10), (11), and (12); all of these amendments related to the procedure by which the "lien" or "charge" would be enforced.

Since the Appellant, after the 1996 amendment, no longer had a right to recover the "full amount" of payments made, the legislature created a mechanism by which a court "may reduce and apportion the department's lien . . . ." This mechanism is contained in the four new subsections of 208.215:(9), (10), (11), (12).

Section 208.215.9 provides that the court "may adjudicate the rights of the parties and enforce the charge," and "may determine what portion of the recovery shall be paid to the department against the recovery." In making such a determination, "the court shall conduct an evidentiary hearing and shall consider competent evidence" relating to six enumerated issues.

Section 208.215.10 RSMo (1996) allows that the "burden of producing evidence sufficient to support the exercise by the court of its discretion to reduce the amount of a proven charge sought to be enforced against the recovery shall rest with the party seeking such reduction."

Section 208.215.11 provides other issues "the court may consider" and requires the department to pay a "pro rata share of the attorney's fees," while also providing that the department lien has priority over all other liens except attorneys' liens.

Lastly, Section 208.215.12 provides that the director may enter into a compromise agreement with the recipient.

Appellant first argues that the clear language of the statute requires the party seeking reduction of this statutory lien must prove all six elements set out in Section 208.215.9, and that Respondent did not prove elements (4), (5), and (6). We disagree. The statute requires the court to consider competent evidence on all six enumerated issues and provides that "the burden of producing evidence" is on the party seeking reduction.

On appeal of a court-tried case, we must sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d at 32. Appellate courts should exercise the power to set aside a judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. *Id.* When determining the sufficiency of the evidence, an appellate court will accept as true the evidence and inferences from the evidence that are favorable to the trial court's judgment and disregard all contrary evidence. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989).

Element four of Section 208.215.9 is: (4) Whether the recovery represents less than substantially full recompense for the injury and the hospital, doctor and other medical expenses incurred to the date of recovery for the care and treatment of the injury, so that reduction of the charge

sought to be enforced against the recovery would not likely result in a double recovery or unjust enrichment to the recipient;

As to this element, Appellant argues that the parties seeking reduction did not offer competent evidence that their recoveries were less than the compensation they would otherwise be entitled to. The fourth element of Section 208.215.9 RSMo (1996) does not require proof that the recovery is less than the compensation they would otherwise be entitled to. Section 208.215.9(4) RSMo (1996) requires the court to consider "whether the recovery represents less than substantially full recompense for the injury and the medical expenses incurred to the date of recovery."

■ Thus, the inquiry is what evidence is there of injury and the medical expenses. In the Canaday case, the evidence adduced was that the injured girl, 8 years old, was ejected from the car as it rolled over, was pinned under a truck while conscious, was taken by helicopter to a hospital where, over 25 days, she had three operations to help recover from a broken femur, a crushed pelvis and a severe hand laceration; and that she was in a full body cast for 8–10 weeks after being released. The evidence was further adduced that her medical bills were over $40,000.00 to the date of the hearing, that Medicaid had paid $24,760.50 and was asserting a lien in that amount and that the only insurance proceeds constituting monies to be paid in settlement of the judgment was the American Family policy of $25,000.00 The evidence was that Canaday's family had no other money to pay the other bills.

This evidence is manifestly sufficient to enable the court to consider whether the recovery represents less than substantially full recompense for the injury and the medical expenses, particularly with a view to whether there would be a "double recovery." Even after the reduction ordered by the court, the remaining medical expenses far exceed the recovery to Canaday. This reduction seems quite modest by that standard.

■ In the Fehling case, the evidence was that Kristie Fehling was in an automobile accident on March 10, 1995, and that she was hospitalized for three months with a severe closed head injury, left rib fractures, fractured neck, fractured hand and wrist. The evidence was her medical expenses exceeded $140,000.00. She had no job, no income, and no ability to pay any expenses. Medicaid claimed a lien of $15,818.04. The total recovery to Fehling was $35,000.00, which was the proceeds of an insurance policy, which was to be paid in settlement of a judgment on her claim. She had a 40% contingency attorneys' fees contract. Since the attorney lien superseded the DMS lien, her recovery would be $15,000.00 less than the DMS lien. This evidence was manifestly sufficient for the court to discharge its statutory duty to consider whether the recovery represents less than substantially full recompense for the injury and expenses incurred.

The fifth element, as stated in Section 208.215.9 RSMo (1996) is:

(5) the age of the recipient and of persons dependent for support upon the recipient, the nature and permanency of the recipient's injuries as they affect not only the future employability of the recipient but also the reasonably necessary and foreseeable future material, maintenance, medical rehabilitative and training needs of the recipient, the cost of such reasonably necessary and foreseeable future needs, and the resources available to meet such needs and pay such costs;

Thus, the court is required to consider (1) the age of the recipient; (2) the nature and permanency of the injuries as they affect (a) future employability and (b) reasonably necessary and foreseeable future maintenance, medical rehabilitative and training needs; (3) the cost of such future needs; and (4) resources available to the recipient.

■ In the Fehling case, the evidence pertaining to the issues listed in subsection 5 is quite sufficient for the court to discharge its duty to consider competent evidence on these issues. The neurological reports on Ms. Fehling make it clear that her "future employability" is severely limited, in part because of the problems caused by this accident. She forgets appointments and other important information. She has trou-

ble with word finding problems. She has limitations in the areas of verbal learning, novel problem-solving and visual memory. She will require considerable support for her efforts to secure appropriate training and employment. Her reasonably necessary and foreseeable material, maintenance, medical, rehabilitative and training needs were established. She was trying to gain custody of her children, but the evidence was that her deficits in verbal learning, verbal memory and visual spatial memory were all impaired and would inhibit her being able to do so. Evidence was that she would have difficulty retaining a job and that she would need a job coach. Evidence was further adduced that she would need extensive support in her parenting efforts. Evidence was also adduced that she would need further surgery and that she had no insurance benefits at all that would cover this future medical need. The evidence was that Fehling had virtually no financial resources available for any of these needs.

In the Canaday case, there was evidence of the age of the recipient and some evidence that the nature and permanency of the child's injuries would affect and limit some of her future employability, and this came from the testimony of the child's mother. There was no testimony about the reasonably foreseeable material, maintenance, medical rehabilitative and training needs of the child, and it is clear that since the child was only 10 years old, these simply are not reasonably foreseeable. Likewise, the costs of these expenses are not reasonably foreseeable. The resources to meet these needs are in evidence, from the testimony of the mother, and those resources are minimal at best. We conclude that there is sufficient evidence in the record on these issues for the court to discharge its duty to consider competent evidence regarding them.

The sixth element, as stated in Section 208.215.9 RSMo (1996), is:

(6) the realistic ability of the recipient to repay in whole or part the charge sought to be enforced against the recovery when judged in light of the factors enumerated above.

The Appellant also contends that there is no evidence on the sixth enumerated element that the court must consider. Appellant makes the argument that since awarding this money to the injured parties will not cure their financial woes, the court should not reduce the state's lien at all. Appellant also argues that awarding this money to the injured parties will not really help them because of their dire financial straits, and that, therefore, Medicaid should not suffer the loss of the money. The argument seems to be that $23,000.00 does not mean much to the injured parties but that it is important to the Medicaid program. This is a curious argument, and it misses the point of the statute. This court is required to consider the realistic ability of the recipient to repay in whole or in part the charge sought to be enforced against the recovery when judged in light of the other five factors. Having considered the evidence of the other five factors, the trial judge had all the evidence necessary for it to determine the realistic ability of the recipients to repay this lien in whole or in part.

Having reviewed the record and having concluded that the trial court discharged its statutory duty to consider competent evidence pertaining to the six factors in Section 208.215.9 RSMo (1996), we now consider Appellant's argument that the court's decision is not supported by the evidence. The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d at 32. This court will set aside the judgment only if we firmly believe that the judgment is wrong. *Fulton v. Adams,* 924 S.W.2d 548, 551 (Mo.App.1996).

In arguing that the trial court's judgment is not supported by the evidence, Appellant claims Respondent did not adduce evidence on certain issues. This court has concluded that evidence was adduced and considered by the court on three of the six factors listed in Section 208.215.9 RSMo (1996). Appellant concedes the court considered evidence on the other three factors. Having considered all this evidence, this court does not firmly

believe the trial court's judgment was wrong. Having accepted as true the evidence and the inferences therefrom that are favorable to the trial court's judgment, we find the judgment was supported by substantive evidence.

Point II is denied.

### III. Trial Court Did Not Fail To Consider All Statutory Factors

The Appellant contends that the trial court did not follow the mandatory language of the statute and did not consider all six factors set forth in section 208.215.9. Appellant argues that since the trial court did not mention them by name and since the trial court did not set forth findings of fact, that therefore the trial court did not properly consider all the factors.

If no requests for findings of fact or conclusions of law are made by the parties or entered by the court, all fact issues are presumed to be in accord with the judgment and the judgment of the trial court will be affirmed under any reasonable theory which may be supported by the evidence. *Green Acres Enterprises, Inc. v. Freeman,* 876 S.W.2d 636, 638 (Mo.App.1994). Where no findings of fact have been issued by the trial court, all controverted facts are treated as if found in accordance with the decision of the trial court. *Schubert v. Tolivar,* 905 S.W.2d 924, 926 (Mo.App.1995).

Here, Appellant did not request findings of fact from the trial court. From the analysis of the elements of Section 208.215 set forth above it is abundantly clear that evidence was introduced on all six factors and that the trial court did consider all six of the elements in the statute.

Point III is denied.

### IV. Settlement Negotiations

Appellant's last argument is that the court erred in considering the settlement negotiations of the parties. There is no evidence that the trial court took these negotiations into consideration in making its decision.

Point IV is denied.

### V. Conclusion

The trial court correctly applied Section 208.215 RSMo (1996) to this case. The judgment is supported by substantial evidence. The decision of the trial court is affirmed in both cases.

LAURA DENVIR STITH, P.J., and HANNA, J., concur.